OPINION OF THE COURT
Leslie Crocker Snyder, J.
This case involves a Grand Jury investigation into a major narcotics organization. Petitioner attorneys have moved to quash subpoenae requiring their appearance before the Grand Jury along with the production of "any and all records of *1014 amounts billed and payments made for services rendered * * * including fee arrangements and retainer agreements” relating to their respective clients.
The People have submitted for court review a number of sealed exhibits as well as the minutes of the Grand Jury proceedings to support their request for an order compelling petitioners to appear before the Grand Jury. Petitioners’ motions to quash allege: (1) that the subpoenae seek testimony and materials which are protected by the attorney-client privilege; and (2) that the subpoenae violate the defendants’ Sixth Amendment right to counsel and Fifth and Fourteenth Amendment due process rights guaranteed by both the Federal and New York State Constitutions. This case appears to be one of first impression in New York.
The issue presented to the court is whether a subpoenae requiring an attorney to appear before a Grand Jury and produce records concerning the fee arrangements with a defendant should be enforced.
CONCLUSION
The court finds that while no attorney-client privilege applies in the instant case, the court nevertheless must balance the broad powers of the Grand Jury against the defendants’ significant constitutional claims. In so doing, the court finds that prior to the enforcement of a Grand Jury subpoena issued to an attorney for a defendant whose right to counsel has attached, the People must show: (1) the relevance of the material sought; (2) no reasonable and legally sufficient alternative source; and (3) good faith in issuing the subpoena.
The People have satisfied these conditions precedent to the enforcement of the subpoenae at issue via the sealed materials and Grand Jury minutes submitted. Therefore, petitioners’ motions to quash the subpoenae are denied.
DISCUSSION
POWERS OF THE GRAND JURY
It is well settled that every person owes a duty to give evidence before the Grand Jury when requested to do so. (Matter of Keenan v Gigante, 47 NY2d 160 [1979].) The Grand Jury, as an arm of society and the court, must receive the support and cooperation of the community if it is to fulfill its essential function. The community is entitled to the assistance *1015 and information of its members in seeking out and controlling the commission of crime. (Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 19 [1980]; People v Woodruff, 26 AD2d 236, 238 [1966], affd 21 NY2d 848 [1968].) The Grand Jury’s authority to subpoena witnesses is not only historic but essential to its task. (Branzburg v Hayes, 408 US 665, 688 [1972], citing Blair v United States, 250 US 273, 279-281 [1919].)
As an investigatory body with broad exploratory powers, the scope of a Grand Jury investigation is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts concerning whether any particular individual will be found properly subject to an accusation of crime. (Matter of Kuriansky v Seewald, 148 AD2d 238 [1st Dept].) The broad power of the Grand Jury is designed to protect citizens from unfair charges and in that capacity it can summon people suspected of crimes or people who "may be able to provide links in a chain of evidence relating to criminal conduct of others”. (United States v Mandujano, 425 US 564, 573 [1976]; Costello v United States, 350 US 359, 362 [1956]; In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238 [2d Cir 1985], cert denied sub nom. Roe v United States, 475 US 1108 [1986].) In other words, the Grand Jury has a dual function: to determine if a crime has been committed under appropriate legal standards and to protect citizens against unfounded criminal charges. (Branzburg v Hayes, supra, at 686-687.)
Grand Jury subpoenae are presumptively valid and can only be challenged by an affirmative showing of impropriety. A witness moving to quash a subpoena has the burden of establishing that the subpoena was issued in bad faith or is for some other reason invalid. These rules are critical to the very nature of the Grand Jury process and its authority. (Matter of Additional Jan. 1979 Grand Jury v Doe, supra, at 20, citing Manning v Valente, 272 App Div 358, 361 [1947], affd 297 NY 681 [1947].) As the United States Supreme Court stated in Branzburg (supra, at 688): "Although the powers of the grand jury,are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public . . . has a right to every man’s evidence,’ except for those persons protected by a constitutional, common-law, or statutory privilege, United States v. Bryan, 339 U.S., at 331; Blackmer v. United States, 284 U.S. 421, 438 (1932); 8 J. Wigmore, Evidence § 2192 *1016 (McNaughton rev. 1961), is particularly applicable to grand jury proceedings.”[1]
Petitioners contend that the subpoenae at issue request testimony and information protected by the defendants’ constitutional rights and by the attorney-client privilege, and that therefore the powers of the Grand Jury should be restricted.
THE ATTORNEY-CLIENT PRIVILEGE
The attorney-client privilege is codified in CPLR 4503 (a).[2] The privilege exists to insure that one seeking legal advice will be able to confide fully and freely in his or her attorney, secure in the knowledge that any confidences will not later be exposed to public view. This privilege, however, is not limitless. (Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980]; see, Hoopes v Carota, 74 NY2d 716; Matter of Jacqueline F., 47 NY2d 215 [1979].)
Since the privilege prevents disclosure of relevant evidence, and thus impedes the quest for truth, it must " 'be strictly confined within the narrowest possible limits consistent with the logic of its principle.’ ” (In re Shargel, 742 F2d 61, 62 [1984], quoting 8 Wigmore, Evidence § 2291, at 554 [McNaughton rev ed 1961].)
In Priest v Hennessy (supra), the Court of Appeals set forth four principles to be applied in determining whether certain communications are protected by the privilege. First, no attor *1017 ney-client privilege can be claimed unless an attorney-client relationship has been established. The relationship arises when an attorney is contacted for the purpose of obtaining legal advice or services. Second, it must be shown that the information sought to be protected by the privilege was a confidential communication made to the attorney for the purpose of obtaining legal advice or services. Third, the party claiming the privilege has the burden of proving each element of the privilege. Fourth, in a proper case, public policy may require disclosure. (Matter of Priest v Hennessy, supra, at 68, 69.)
In applying these principles, the Court of Appeals in Priest (supra) held that communications concerning fee arrangements are collateral to the attorney-client relationship and have no direct relevance to the legal advice sought. (Matter of Priest v Hennessy, supra, at 70.) Furthermore, the payment of legal fees by a third person does not create a sufficient relationship between the attorney and the third-party benefactor to claim the privilege because such a relationship is not undertaken for the purpose of obtaining legal advice. The court concluded that the name of the person paying the fees and the amount of the retainer paid are "quite simply not the confidences which the privilege was intended to protect.” (Matter of Priest v Hennessy, supra, at 70.)
Federal courts have also consistently held that the attorney-client privilege does not protect fee arrangements. (United States v Pape, 144 F2d 778 [1944], cert denied 323 US 752 [1944]; In re Shargel, 742 F2d 61, supra; Colton v United States, 306 F2d 633 [1962]; United States v Hodge & Zweig, 548 F2d 1347 [1977]; Matter of Pavlick, 680 F2d 1026 [1982]; In re Grand Jury Proceedings Served Upon Doe, 781 F2d 238, cert denied sub nom. Roe v United States, 475 US 1108, supra; Branzburg v Hayes, 408 US 665, supra.)
Counsel for Dominick Maldonado argues that since nondisclosure of the fee arrangement was a precondition of her being retained in this case, the Priest rationale is inapplicable. In support of this claim, defendant Maldonado has submitted an affidavit stating that at the time he asked Ms. Stewart to represent him, he told her never to "discuss with anyone anything about her retainer including fee arrangements or payments”. Furthermore, defendant swears that if his attorney testifies in the Grand Jury, he "could not trust her anymore”.
*1018 In reviewing the case law on this issue, it is clear to this court that the potential for disclosure of fee arrangements is present in every attorney-client relationship and that neither counsel nor the defendant can rest upon a claim that disclosure "might chill their relationship of trust. This is a self-imposed problem that very well could have been avoided. ” (In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238, 248, cert denied sub nom. Roe v United States, 475 US 1108, supra; emphasis added.)
The court finds that defendant Maldonado’s affidavit is an attempt to create a privilege where none exists. As the United States Supreme Court has stated, the mere fact that a communication was made in express confidence, or in the implied confidence of a confidential relation, does not create a privilege. (Branzburg v Hayes, 408 US 665, 682, n 21, supra.)
The court has examined the sealed affidavit submitted by the People along with relevant Grand Jury testimony. These documents clearly indicate that the focus of the Grand Jury investigation into fee payments concerns the payment of legal fees by a third-party benefactor.
Where a third-party benefactor has paid for the legal representation of the client, counsel should be aware that fee information is not privileged and the attorney is under a duty to explain to the client the conflict of interest arising from this fee arrangement and the potential for subsequent disclosure of this arrangement and disqualification of the attorney. (In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238, 248, cert denied sub nom. Roe v United States, 475 US 1108, supra.) An attorney cannot accept compensation from a third party except upon the client’s consent after full discussion of the dangers of outside influence. (Code of Professional Responsibility DR 5-107 [A]; EC 5-21.)[3]
*1019 No attorney need find himself or herself in the position of petitioners here. Part of an attorney’s advice to any client seeking to make a fee arrangement a confidential communication not subject to disclosure must be a warning that this may not be legally possible. Petitioners were on notice of the law in this area and under a duty to advise their clients accordingly.
This general principle that fee arrangements are not privileged communications was reaffirmed by the Court of Appeals in a different factual context in a recent opinion. (Hoopes v Carota, 74 NY2d 716.) There the court stated: "The questions regarding whether legal advice was obtained and how such advice was paid for were not protected. The attorney-client privilege extends only to confidential communications made to an attorney for the purpose of obtaining legal advice (see, Matter of Priest v Hennessy, 51 NY2d 62, 69). Whether an attorney was consulted and who paid the legal fees do not ordinarily constitute such confidential communications (see, id.). We are not persuaded that the instant case falls outside the general rule (cf., Banco Frances e Brasileno S. A. v Doe, 36 NY2d 592, 599; Matter of Kaplan [Blumenfeld], 8 NY2d 214, 218-219).” (Supra, at 717.)
Petitioners contend that even if this court were to find that fee arrangements are generally not privileged, the instant case nevertheless falls within two judicially created exceptions: the "legal advice exception” and the "last link” exception.
In Baird v Koerner (279 F2d 623 [I960]), the Ninth Circuit held that a client’s identity and the nature of that client’s fee arrangement may be privileged where the attorney can show that disclosure of such information would implicate the client in the very criminal activity for which legal advice was sought. (United States v Hodge & Zweig, 548 F2d 1347, supra.)
The Fifth Circuit in Matter of Pavlick (supra) recognized a limited exception to the general rule that fee arrangements are not privileged where the disclosure of the client’s identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the *1020 client’s indictment. (Matter of Pavlick, 680 F2d 1026, 1027, supra.)
Neither of these exceptions are applicable here. Even if one could argue that some exception applied in the instant case, it is well established that the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior and does not apply where legal representation was obtained in furtherance of intended, or present, illegal activity, even if disclosure would supply the "last link” of evidence leading to a client’s indictment. (United States v Hodge & Zweig, supra, at 1354; Matter of Pavlick, supra, at 1028; United States v Friedman, 445 F2d 1076, 1086 [1971]; 8 Wigmore, Evidence § 2291, at 545 [McNaughton rev 1961].) This crime-fraud exception to the privilege applies even where the ¿attorney is completely unaware that the legal advice was sought for illegal purposes. (United States v Hodge & Zweig, supra, at 1354; Matter of Pavlick, supra, at 1028; see also, Clark v United States, 289 US 1, 15 [1933]; Baird v Koerner, supra, at 634.)
However, the cases cited make clear that the party seeking to invoke the crime-fraud exception must present a prima facie case that the attorney was retained for this "improper purpose”. As the Fifth Circuit stated: "where the government makes a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy, the crime or fraud exception applies to deny a privilege to the identity of him who foots the bill — and this even though he be a client of the attorney and the attorney unaware of the improper arrangement.” (Matter of Pavlick, 680 F2d 1026, 1029, supra.)
In reviewing the sealed affidavits and the Grand Jury testimony, this court finds that the People have made out a prima facie case that an integral part of the conspiracy was an agreement by a third-party benefactor to provide legal services for any coconspirators who were arrested.[4]
This court will not allow any promise of legal services: "to be made a fringe benefit for use in recruiting criminal conspirators. To draw the cloak of privilege across such an arrangement would be to shield the performance of an undertaking *1021 on which, in part, the conspiracy was based. In such circumstances, the act of furnishing bail and counsel was an act done in furtherance of the illegal scheme itself’. (Matter of Pavlick, supra, at 1028, citing United States v Hodge & Zweig, 548 F2d, supra, at 1354-1355 [emphasis added].)
On this point, it is difficult not to ask the obvious: if a third party pays the legal fees for every person arrested in a drug conspiracy case, should the attorney retained for this purpose not question the purpose or motive of such payment? Is there not an inherent or potential conflict of interest which an attorney must recognize and about which any client must be advised?
Petitioners’ position appears to compound several implausible principles. First, merely because a client asks to have fee arrangements remain confidential, he is assured that they will be protected despite all law to the contrary which should cause the attorney to advise the client that this may not be possible. Second, even if such fee arrangements involve third-party benefactor payments, the same assurances may be given to the client, notwithstanding even clearer legal precedent to the contrary. Finally, even if the spectre of illegality is visible from the structure of the third-party benefactor payments— i.e., to protect every member of the particular criminal conspiracy — the attorney can insulate himself/herself from the legal consequences (lack of privilege/potential for conflict) by ignoring them. This court will not accept that position.
In returning to the four principles enunciated in Matter of Priest v Hennessy (51 NY2d 62, supra), reaffirmed in numerous cases cited above: first, whether an attorney-client relationship existed between petitioners and the defendants has been addressed above and in the sealed documents attached. Second, it is clear that the information sought to be protected and at issue here was not a "confidential communication” under the law, despite efforts of the attorneys or defendants to make it such. The attorneys should have known this and advised the defendants accordingly at the time the advice was sought. Third, the petitioners have failed to meet their burden of proving the elements of the privilege as applicable here. The fee arrangements at issue did not constitute a "legal advice” exception to disclosure nor form the "last link” in the chain of criminality to be proven by the prosecution (as per Grand Jury minutes and other sealed exhibits). Finally, even if some exception to disclosure could be made out by petitioners, public policy requires disclosure of the matters subpoenaed *1022 because of the crime-fraud exception to the attorney-client privilege of which the People have submitted prima facie proof via the sealed documents.
In conclusion, the court finds that the testimony and material subpoenaed is not protected by the attorney-client privilege.
CONSTITUTIONAL RAMIFICATIONS
Petitioners also move to quash the subpoenae alleging that they infringe on the defendants’ Sixth Amendment right to counsel, and consequently, their Fifth and Fourteenth Amendment due process rights under both the Federal and New York State Constitutions.
The Grand Jury has the right to hear every person’s evidence, unless such evidence is protected by constitutional, common-law or statutory privilege. (Branzburg v Hayes, 408 US 665, 688, supra, as previously discussed.) Having found that no statutory or common-law privileges apply, there still remains the question of whether petitioners’ subpoenaed testimony is protected by any constitutional doctrine. In the instant case, each subpoena has been framed to each attorney in the name of his or her alleged client, a specific defendant in a pending narcotics indictment before this court. Clearly, the right to counsel of each defendant has attached and Sixth Amendment considerations are involved.[5]
The People’s memorandum of law in support of their motion fails to address these issues adequately. The majority of Federal cases, interpreting the Sixth Amendment to the US Constitution, also fail to give sufficient import to the infringement of a defendant’s constitutional rights arising from counsel’s testimony before a Grand Jury. (Compare, majority and dissenting opns In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238, 254, cert denied sub nom. Roe v United States, 475 US 1108, supra; see also, United States v Monsanto, 491 US —, 105 L Ed 512; Caplin & Drysdale v United States, 491 US — 105 L Ed 528.)
Despite some more restrictive decisions recently, the New York State courts have consistently given a broader interpretation to a defendant’s Sixth Amendment rights. (See, e.g., *1023 People v Cunningham, 49 NY2d 203 [1980] [a suspect may not waive his right to counsel if he is in custody and requests to speak with an attorney]; People v Rogers, 48 NY2d 167 [1979] [prior to interrogation the police must inquire of the defendant if he is represented by counsel where they have knowledge or should have knowledge of pending charges]; People v Samuels, 49 NY2d 218 [1980] [a suspect may not waive his right to counsel if an accusatory instrument has been filed in court]; but see, People v Ridgeway, 64 NY2d 952 [1985] [the filing of a "John Doe” felony complaint does not trigger the right to counsel]; People v Robles, 72 NY2d 689 [1988] [as a defendant’s right to counsel derives from representation on pending charges, custodial interrogation is permissible where the People have disposed of defendant’s outstanding charges prior to arrest]; People v Wesley, 73 NY2d 351 [1989] [a defendant does not have "automatic standing” to contest the seizure of physical evidence merely because the People allege constructive possession].)
It is clear that whenever an attorney is compelled to testify in the Grand Jury, the attorney may well be placed in the position of becoming a witness against the client or risking contempt. Under these circumstances, it would be ludicrous for any court to ignore the potential "chilling effect” that a Grand Jury subpoena to counsel has on the attorney-client relationship.
Given the historical importance of the Sixth Amendment right to counsel, as preserved and maintained by our Court of Appeals and as applicable in the postindictment situation here, it is necessary to balance the rights and powers of the Grand Jury with the defendants’ right to counsel of their choice.
Federal law notwithstanding, this court finds it necessary to articulate a standard which balances these conflicting interests. This court holds that where the People seek to enforce a Grand Jury subpoena compelling the appearance of an attorney for a defendant whose Sixth Amendment right to counsel has attached, they first must show: (1) reasonable grounds to believe that the material is relevant to the investigation of the Grand Jury; (2) no reasonable, legally sufficient alternative source for the information requested; and (3) good faith.
Requiring the People to show relevance is a minimal burden considering the undermining effect the subpoena may well have on the attorney-client relationship. It should be noted *1024 that the material sought need have no ultimate impact on the outcome of the Grand Jury action, but must be relevant to its inquiry. Once the material sought is relevant to any legitimate Grand Jury inquiry and no other reasonably available and legally sufficient source can provide all of the information that the attorney could, the subpoena should be enforced.
A rule mandating that the prosecution make a preliminary showing of "need” would impose too high a burden considering the investigatory nature and exploratory powers of the Grand Jury process. To require that the government show its "need” for the information sought would hamper severely the investigative function of the Grand Jury, if not stop the Grand Jury " 'dead in its tracks’.” (In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238, 248, cert denied sub nom. Roe v United States, 475 US 1108, supra; see also, Matter of New York City Dept. of Investigation v Passannante, 148 AD2d 101 [concerning standards for a subpoena issued by the Department of Investigation].)
On the other hand, since a subpoena interferes with a defendant’s right to counsel of his or her choice, fundamental fairness requires the prosecution to make a reasonable attempt to secure relevant information from alternative, legally sufficient sources. In evaluating the prosecution’s efforts, a court must recognize the importance of expeditious Grand Jury proceedings and the need for secrecy of the investigation. Where the prosecution can show that attempts to obtain the materials from an alternative, legal source would compromise the investigation or impair the ability to obtain the information in a timely fashion, such efforts should not be required. In no event should these requirements be allowed to delay unduly any Grand Jury investigation.
Finally, the requirement that the prosecution show that the subpoena has been issued in good faith is necessary in light of the marked increase in the number of attorney subpoenae issued in recent years and the justifiable concerns of various criminal defense organizations. (See, Report of the Comm on Crim Advocacy of the Assn of the Bar of City of New York, The Issuance of Subpoenae Upon Criminal Lawyers in Criminal Cases by the State and Federal Prosecutors: A Call for Immediate Remedial Action, July 17, 1985 [submitted with amicus curiae mem on behalf of the National Association of Criminal Defense Lawyers, the New York State *1025 Association of Criminal Defense Lawyers, and the New York Criminal Bar Association].)[6]
Good faith will be determined by the circumstances of each case and such factors as the timing of the subpoena. The People cannot use Grand Jury subpoenae for the "sole or dominant purpose of preparing the pending indictment for trial. * * * However, where the purpose of the Grand Jury investigation is directed to other offenses, its scope should not be circumscribed and any collateral or incidental evidence from bona fide inquiries may be used by the prosecutor against the defendant at the trial of the pending indictment.” (Matter of Hynes v Lerner, 44 NY2d 329, 333 [1978]; In re Grand Jury Subpoena Duces Tecum [Simels], 767 F2d 26 [1985].)
The test fashioned by this court should sufficiently address the legitimate concerns of defense attorneys who are wary of the potential for abuse of Grand Jury subpoenae.
Prosecutors are also cognizant of the potential for abuse of Grand Jury subpoenae and the constitutional and ethical considerations raised by such process. The Department of Justice has adopted internal guidelines governing the issuance of attorney subpoenae. (US Attorneys’ Manual, tit 9, § 9-2.161 [a].) These policy regulations permit the issuance of attorney subpoenae by an Assistant United States Attorney only upon a showing to the Assistant Attorney General in charge of the Division of: no alternative source; a reasonable belief that a crime has been or is being committed; and a showing that the information reasonably is needed for the successful completion of the investigation. However, according to at least one Federal Judge, these guidelines are honored only in the breach and not in the observance. (In re Grand Jury Subpoena Served Upon Doe, 781 F2d 238, 258 [dissenting opn Cardamone, J.], cert denied sub nom. Roe v United States, 475 US 1108, supra.)
Applying the three-prong test established by this court to the case at bar, it is clear to this court that the petitioners’ motions to quash the subpoenae must be denied. In reviewing the sealed affidavits submitted, this court is convinced that the material is relevant to the Grand Jury’s investigation. While an indictment has been voted and filed as to the defendants at bar, the Grand Jury continues to investigate the extent of the conspiracy. Third-party payments of the legal fees for the *1026 indicted defendants are unquestionably relevant to this investigation. Because of the nature of the information sought, there is no reasonable, legally sufficient alternative source for the information. Finally, after reviewing the unsealed and sealed documents, and the Grand Jury minutes, there is no question that the People are acting in good faith. There is no reason to believe that the instant subpoenae were served to obtain trial evidence. To the contrary, the People served the subpoenae directed at unindicted individuals concerning whom the Grand Jury investigation is continuing. The sealed documents and Grand Jury minutes support a finding of good faith.
Finally, as to petitioners’ claim of prosecutorial vindictiveness, this is not an attempt to single out an attorney for harassment or to violate a defendant’s right to counsel of his or her choice. While petitioners claim to have been selectively discriminated against by the issuance of the instant subpoenae, purportedly because of their representation of unpopular clients and/or causes in other cases, such claims are completely without foundation. Petitioners are representing defendants accused of participating in a major narcotics conspiracy. The People are entitled to petitioners’ testimony in this case, having met the criteria established by the court, regardless of who they are and what they do, for the reasons detailed in this opinion and for the reasons clearly set forth in the People’s motion and the sealed documents.
There is no question that where defense counsel is compelled to testify in the Grand Jury, such testimony may destroy any attorney-client relationship, as previously discussed. Therefore, disqualification of counsel must be of concern to this court. There is nothing "frivolous” about petitioners’ claim, as the People suggest.
Since defendants have already been indicted, any use of the petitioners’ testimony would be at the time of defendants’ trial. Such use must be carefully reviewed by the trial court at a pretrial in limine hearing. As In re Grand Jury Subpoena Served Upon Doe (781 F2d 238, cert denied sub nom. Roe v United States, 475 US 1108, supra) makes clear, certain criteria must be met prior to this problem becoming an issue: the attorney must actually incriminate the client; the People must intend to use the statement at trial; the case must go to trial; and the People must call the attorney as a witness against his or her client. (Supra, at 245.) This problem could conceivably be circumvented in a number of ways, as by *1027 stipulation, and will be thoroughly analyzed at the pretrial hearing by the court.
Ultimately, while abrogation of the attorney-client relationship may result, if the attorneys and their clients have placed themselves in this position, they have no cause to complain.
Petitioners’ other objections are without merit.
Reference has been made by petitioners and amici interests to concern about defendants’ rights to a speedy trial. However, to this date, no motions have been filed in the case by petitioners. As petitioners point out, an order was signed by this court to enable all defendants and their counsel to meet at Rikers Island to discuss the case. After this occurs, as all parties agreed, a motion schedule will be set, with both sides and the court needing substantial time to address complicated legal issues. Therefore, any trial prior to the end of this year appears unlikely. The court intends to proceed on that timetable and sees no reason why this matter, if handled expeditiously, should cause undue delay.
PROCEDURE
It would be preferable prior to issuing a subpoena, as a policy consideration, and in furtherance of a balancing of rights, that a prosecutor attempt to obtain information from an attorney on a voluntary basis. This court strongly suggests that such a policy be adopted by every prosecutorial office along with other guidelines which would safeguard both the rights of the government and the rights of the defense.
It would also be preferable if the People do seek such a Grand Jury subpoena, that they meet the criteria enunciated here prior to its issuance. However, under no circumstances should such a subpoena be enforced by a court prior to the established criteria being met.
If the subpoena is issued and there is a motion to quash, the People should be allowed to submit to the court sealed materials in support of their response as in the instant case. Since Grand Jury proceedings are secret, applications for Grand Jury subpoenae involving attorneys will normally be ex parte and in camera. Clearly, all proceedings must be recorded and preserved for appellate review. (See, Matter of Hynes v Lerner, 44 NY2d 329, 334, supra.)
In addition to the secrecy required by the Grand Jury process, such sealed applications have been approved in narcotics cases for obvious reasons. (See, People v Darden, 34 *1028 NY2d 177 [1974] [as applied by this court to protective orders for search warrant affidavits]; People v Seychel, 136 Misc 2d 310 [1987].) The Criminal Procedure Law recognizes the importance of protective orders in this situation as well. (CPL 240.50.) The sealed materials in this case demonstrate the need for sealed proceedings. In cases such as the one at bar, there can be no other recourse. (See also, United States v Zolin, 491 US —, 105 L Ed 469 [supporting the use of in camera proceedings].)
CONCLUSION
In conclusion, the court finds that the subpoenae at issue here do not seek privileged information and that the People have satisfied the criteria established by this court for their issuance. Therefore, petitioners’ motions to quash are denied.
Petitioners are hereby ordered to appear before the Grand Jury investigating the instant matter and to produce the subpoenaed documents.

. It should be noted that many lawyers and Judges have expressed skepticism concerning the power of the Grand Jury. This skepticism was best summarized by the Chief Judge of this State in 1985 when he publicly stated that a Grand Jury would indict a "ham sandwich”.

. CPLR 4503 (a): "Confidential communication privileged; non-judicial proceedings. Unless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local government agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof. The relationship of an attorney and client shall exist between a professional service corporation organized under article fifteen of the business corporation law to practice as an attorney and counselor-at-law and the clients to whom it renders legal services.”

. Disciplinary Rule 5-107 (A):
"Except with the consent of his client after full disclosure, a lawyer shall not:
"1. Accept compensation for his legal services from one other than his client.
"2. Accept from one other than his client any thing of value related to his representation of or his employment by his client.”
Ethical Consideration 5-21: "The obligation of a lawyer to exercise professional judgment solely on behalf of his client requires that he disregard the desires of others that might impair his free judgment. The desires of a third person will seldom adversely affect a lawyer unless that person is in a position to exert strong economic, political, or social pressures upon the
*1019 lawyer. These influences are often subtle, and a lawyer must be alert to their existence. A lawyer subjected to outside pressures should make full disclosure of them to his client; and if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client.”

. Recently, the United States Supreme Court has suggested that a court can review alleged attorney-client privileged communications in camera in order to determine whether the crime-fraud exception exists. (United States v Zolin, 491 US —, —, n 1, 105 L Ed 469, 480, n 1.) The court would allow such a review upon a minimal showing of reasonable good faith by the prosecution. (491 US, supra, at —, 105 L Ed, supra, at 490.) This court would prefer not to place defense counsel in that position. ■

. It should be noted that if the People’s subpoenae had issued to petitioners in the name of any unindicted third-party benefactor, other considerations would have to be addressed including whether or not right to counsel had attached under New York law.

. The requirements established by the court here are similar to those proposed in the memorandum submitted.