*387 OPINION OF THE COURT
Joel M. Goldberg, J.
The issue presented here concerns the proper procedure to be followed when grand jurors wish to ask questions of a witness whose testimony was videotaped pursuant to CPL 190.32.
On June 5, 1992, the defendant was arrested and charged with attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the fourth degree, arising out of an alleged stabbing of Alonso Johnson which occurred earlier that day.
By an omnibus motion, dated October 1, 1992, the defendant moved pursuant to CPL 210.30 for an inspection of the Grand Jury minutes and dismissal of the indictment.
For the following reasons, the defendant’s motion is granted and the indictment is dismissed as defective. (CPL 210.35 [5].)
THE FACTS
On July 21, 1992, the People obtained an ex parte order pursuant to CPL 190.32 permitting the testimony of the victim, Alonso Johnson, to be videotaped on the ground that he was physically unable to appear before the Grand Jury. The videotaping took place at Kings County Hospital where Mr. Johnson had been confined as a result of the assault. The propriety of that order is not an issue herein.
The videotaped testimony of Mr. Johnson was the only evidence presented to the Grand Jury. At the time of the videotaping, Mr. Johnson was unable to speak and his "testimony” consisted of nods, hand motions, and handwritten answers to questions. Because of Mr. Johnson’s limited ability to testify, the People elicited an extremely "bare bones” view of the incident.
The testimony from Mr. Johnson established that at approximately 10:50 p.m., on June 5, 1992, he was on Prospect Place in Kings County when he was in an argument with someone named "Carl” who stabbed him. Mr. Johnson knew "Carl” from "the neighborhood” for approximately one year and saw him "everyday, pretty much.” Mr. Johnson testified that he had previously been to "Carl’s” apartment which was on Prospect Place next to Phoenix House. Mr. Johnson indicated "Carl” had stabbed him in the stomach area. When asked where he went after being stabbed, Mr. Johnson responded *388 that he went to St. John’s Place. Mr. Johnson identified "Carl” later that night in the hospital. Mr. Johnson subsequently learned that "Carl’s” full name was "Arthur Dukes.” There was no testimony concerning what the argument was about, the type of weapon used, or the nature of the injuries.
At the conclusion of the videotape, the prosecutor asked the Grand Jury whether they had any questions to ask of Mr. Johnson, stating that she would go back to the hospital for that purpose.
In response, a grand juror asked, "How did [Mr. Johnson] wind up on St. John’s Place? Why didn’t he stay at the scene where he got stabbed?” The following exchange resulted:
"prosecutor: Why he stayed in that place, I won’t be able to respond to that. However, you have to evaluate Mr. Johnson’s presentation, the way he is, his credibility and whatever he says.
"Now, it is my recollection that he did say that he, after being on Prospect Place, he went to another place. The reason why he went to the other place, I will not be able to respond. And at this point, for purpose of this examination and for purpose of this presentation, it is irrelevant the reason why he went to the other place.
"juror: But I mean, if a person gets stabbed, to me, you stay where you at and someone calls the police.
"juror: It’s not necessary.
"prosecutor: I ask you not to deliberate in this case.
"Yes. You have to understand, he is not here, and I will not be able to step outside like normally I would like.
"Any other questions?
"juror: He stated that he knew the other individual. "prosecutor: It is my recollection—
"juror: Were they friends? Are they friends?
"prosecutor: It is my recollection that he stated that he knows him from the neighborhood.
"juror: Okay. But they could have been friends.
"prosecutor: Okay. They could have been friends. Would you like to know whether they were friends?
"juror: Yes, it would help.
"prosecutor: Okay. I just ask you to stay one minute. I will be right back.
"(Whereupon, [the prosecutor] exited the Grand Jury room.)
*389 "(Whereupon, [the prosecutor] reentered the Grand Jury room.)
"prosecutor: There are just two questions by the Grand Jury. One was why did Mr. Johnson go to St. John’s Place and my response to that is that it’s a very good question, and I am sure we would like to know that. Maybe down the road when this case is on for trial, if that is the case, that will be a proper place to ask that question. However, at this time, we’re talking about an allegation of stabbing and that would be irrelevant as to the presentation here.
"Now, we have had another individual who asked a question whether they were friends. My response to that was that you have to evaluate the credibility of the witness and determine, based on what a witness says, whether to believe that witness or not.
"Again, my response to that would be is that this was a hospital videotape that was made. This is an allegation of a stab wound. It is my instruction to you that again, that may be relevant down the road. At this point in time, ladies and gentlemen of the Grand Jury, it is irrelevant as to whether they were friends or not. Although, if they were friends or if they weren’t friends, it does negate what happened.
"Yes?
"juror: On that situation here, on that situation, [are] you trying to find out whether it was an assault?
"prosecutor: Basically, your job as a Grand Jury, you’re to find whether there is a reasonable cause to believe that the offense took place and that the person being charged with that could have committed that — may I finish.
"You’re not here — this is not a trial. You’re not here to convict someone, to find that person guilty or not. You’re basically here to determine whether there is legally sufficient evidence as well as reasonable cause to believe. Now these are the two standards that are needed here, not any others.
"Your question, sir?
"juror: Yes. We’re here to determine, then we know — the accusation was there been a stabbing, but we’re trying to say, are there assault charges that we are going to indict for?
"prosecutor: Now, I will charge you. I will be reading the charges to you, and I will give you definitions as to the charges.
"Now, as to the explanations, do the two jurors understand why this is irrelevant at this point in time?
*390 "jurors: Yes.”
During the charge, in response to the prosecutor’s inquiry as to whether there were questions about the charge, a grand juror asked, "I would like to know how many times was he stabbed? I would like to know, to have a bearing on whether he really tried to kill him or not?”
The prosecutor replied, "You have to go by what Mr. Johnson stated.”
DISCUSSION
It is clear that the Grand Jury was not asking about irrelevant matters when they asked why Mr. Johnson did not stay at the place where he was allegedly stabbed and whether he was a "friend” of the defendant. Because the defendant’s alleged intent to kill Mr. Johnson is an element of the attempted murder charge, and determination of the credibility of Mr. Johnson was within the scope of the Grand Jury’s responsibility, the prosecutor’s declaration that questions concerning these issues were "irrelevant” and that the Grand Jury would "have to go by” what they already heard, constituted improper legal advice. (CPL 190.25 [6].)
The inability of Mr. Johnson to appear before the Grand Jury made presentation of this case difficult for the prosecutor. Nevertheless, the prosecutor had no right to short-circuit the Grand Jury’s right to ask their own questions of Mr. Johnson, even if it meant returning to the hospital for another videotaping or waiting for Mr. Johnson to be able to be personally present.
CPL 190.30 (4) allows a videotaped examination of a witness made pursuant to CPL 190.32 to be received in evidence in a Grand Jury proceeding as the testimony of such witness. However, CPL 190.30 (5) specifically provides that even where a Grand Jury hears videotaped testimony pursuant to CPL 190.32, the Grand Jury retains the power to cause a witness to be called pursuant to CPL 190.50.
The Grand Jury is the exclusive judge of the facts with respect to any matter before it. (CPL 190.25 [5]; People v Pelchat, 62 NY2d 97, 105 [1984].) The Grand Jury has the power to call witnesses not called by the prosecutor, or, as indicated in CPL 190.30 (4), a witness who has testified on videotape, by directing that the District Attorney issue and serve a subpoena on such witness. (CPL 190.50 [3].) Such a decision by the Grand Jury to direct the District Attorney to *391 subpoena a witness is an "affirmative official action” and would require the concurrence of at least 12 grand jurors. (CPL 190.25 [1].)*
Therefore, in this case, rather than improperly informing the Grand Jury that their proposed questions were irrelevant and that they "had to go by” what they already heard from the victim, the prosecutor was obligated to either go back to the hospital and question Mr. Johnson or advise the Grand Jury that she would not do so. If the prosecutor elected not to go back to the hospital, the Grand Jury should have been instructed that it had the power, upon a vote of at least 12 grand jurors, to direct the District Attorney to subpoena Mr. Johnson. As the exclusive judge of the facts, the Grand Jury should have been permitted to decide for themselves whether answers to the proposed questions warranted delaying the case.
It is improper to advise a Grand Jury that indictment of a specific individual is a “ 'now or never’ ” proposition. (People v Montalvo, 113 Misc 2d 471, 473 [Sup Ct, Kings County 1982].) Indeed, in this case, the prosecutor served the Grand Jury the proverbial "ham sandwich” and told them, in effect, to take it or leave it. (See, Matter of Grand Jury Subpoena [Stewart], 144 Misc 2d 1012, 1016, n 1 [Sup Ct, NY County 1989] [noting that it has been said that a prosecutor could get a Grand Jury to indict a ham sandwich].)
It is understandable that the prosecutor may have been concerned about the practical problems involved either in returning to the hospital for further videotaping or adjourning the presentation until Mr. Johnson could testify in person. However, even if the Grand Jury had voted to subpoena Mr. Johnson, the prosecutor would have had the option of applying to the court which impaneled the Grand Jury for an order vacating or modifying such direction on the ground that such was in "the public interest.” (CPL 190.50 [3].)
CPL 210.20 (1) (c) provides that an indictment may be dismissed on the ground that the Grand Jury proceeding was defective within the meaning of CPL 210.35. As stated in CPL 210.35 (5), a Grand Jury proceeding is defective when it fails *392 to conform to the requirements of CPL article 190 to such degree that the integrity thereof is impaired and prejudice to the defendant may result.
The evidence before the Grand Jury did not detail the nature of the "argument,” the extent of the prior relationship between the defendant and the victim, the number of stab wounds, the details of the injury, or the type of weapon used. The evidence did not overwhelmingly establish that the defendant had the requisite intent to kill to support the attempted murder charge. Thus, the failure to advise the Grand Jury that it had a right to decide whether to seek answers to their relevant questions on the issue of the defendant’s intent may have prejudiced the defendant and rendered the proceedings defective. (See, People v Calbud, Inc., 49 NY2d 389, 395-396 [1980].) The guidance provided by the prosecutor was not sufficient for the Grand Jury to carry out its function. (People v Caracciola, 78 NY2d 1021 [1991]; People v Valles, 62 NY2d 36, 38 [1984].) Only the possibility, not the certainty, of prejudice need be established. (See, People v Sanchez, 125 Misc 2d 394 [Sup Ct, Kings County 1984] [and cases cited therein].) Consequently, the indictment must be dismissed.
The People are authorized to submit the charges to the same or another Grand Jury. (CPL 210.20 [4].) This authorization shall serve as an order holding the defendant for the action of the Grand Jury, and the defendant’s bail status shall remain the same. (CPL 210.45 [9].)

 The decision to call a witness by a vote of 12 grand jurors should be distinguished from requests by grand jurors for a readback of prior testimony or for clarification of a legal instruction. Such requests should be honored without taking a vote. (People v Jackson, 148 Misc 2d 886, 889 [Sup Ct, Kings County 1990].)