People v Jules (2025 NY Slip Op 25226)

[*1]

People v Jules

2025 NY Slip Op 25226

Decided on October 17, 2025

Supreme Court, Queens County

Morris, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 17, 2025
Supreme Court, Queens County

The People of the State of New York

against
Riccardi Jules

Ind. No. 70081/25

Queens County District Attorney's office by ADA Matthew Regan
Defense Counsel Scott Davis, Esq

Gia Morris, J.

The defendant, RICCARDI JULES, submitted an omnibus motion dated May 23, 2025, seeking, among other relief, release of the grand jury charge and, upon inspection, dismissal of the indictment on the grounds that the grand jury presentation was defective. The People responded to that motion on June 16, 2025. On July 7, 2025, after the Court conducted an in camera review of the grand jury minutes, the Court granted the defendant's application to the extent that it released pages 241 through 248 of the grand jury minutes. This was done so that the defendant had additional information regarding a "readback" made to the grand jury, in order to file any additional motions as it relates to the presentation of this case to the grand jury. This was done both by email, as well as in open court on July 11, 2025. The defendant subsequently filed the instant motion to dismiss the instant indictment on the grounds that the presentation to the grand jury was defective as a matter of law. The People's response was filed on October 6, 2025.
As is detailed more fully below, the court has reviewed the grand jury minutes, the grand jury attendance records for the dates the case was heard, as well as the submissions of the parties. Based upon this review, it is clear that the People's unilateral and improper decision to provide a readback of the testimony of the People's critical and essential witnesses, combined with a grand jury instruction that grand jurors who heard this readback, but were not present for the live, in-person testimony, were now able to vote as to whether to indict the defendant, impaired the integrity of the grand jury and created a substantial risk of prejudice to the defendant to such a degree that the exceptional remedy of dismissal of the indictment is necessary. See CPL § 210.20[1][c]; CPL § 210.35[5]).
 Relevant Statement of Facts
The defendant, Riccardi Jules, was arrested in December 2024, and charged with course of sexual conduct against a child (PL §130.75[1]) and related charges stemming from an allegation made by his long-time partner's daughter that, between September 2014 through September 2021, he had sexually abused her. At the defendant's arraignment, bail was set, and the case was presented to a grand jury. The People submitted three witnesses to the grand jury including the complaining witness, who testified on December 18, 2024, and two outcry related witnesses, who testified on December 18 and 19, 2024. The defendant asserted his right to testify in the grand jury, which was done on December 23, 2024. The defendant proffered, and the grand jury voted to hear from, the complaining witness' mother and sister, which was done on December 24, 2024. As relevant to the instant motion, there were 23 grand jurors assigned to the grand jury that heard the defendant's case.[FN1]
On December 18, 2024, 3 jurors were absent. On December 19, 2024, 1 juror was absent. On December 23, 2024, 4 jurors were absent. On December 24, 2024, 4 jurors were absent. In total, while there was a quorum of at least 16 jurors on each of the relevant dates, only 12 grand jurors were present on December 24, 2024, that had heard all the live, in-person testimony from each of the witnesses that testified both by the People and the defense. Despite legally being able to have the grand jury vote on the charges, the People chose not to have the grand jury vote and instead consented to the defendant's release pursuant to CPL §180.80.
On January 2, 2025, 22 of the 23 grand jurors were present, 12 of which had been present and heard all the in-person testimony presented. Nevertheless, the People, unprompted by a request from the grand jury, conducted a "readback" of the entirety of the People's case. This readback included testimony from a witness who testified on December 19, 2024, when only one grand juror was absent. Notably, and for reasons unknown to the Court, none of the defendant's testimony, nor either of the two witnesses' testimony that he proffered, was readback to the grand jury. After the readback, the People instructed the grand jury that, in addition to the grand jurors that heard the witnesses testify in person, the grand jurors that only heard the readback were also now able to vote. The grand jury subsequently voted to indict the defendant. There is no way for the Court to know which grand jurors voted to indict the defendant and thus there is no way to determine if the grand jurors that only heard the readback, and were not present when the witnesses testified, voted to indict the defendant.

Discussion
It is well-settled that the purpose, or primary function, of a grand jury proceeding is to investigate crimes and to determine whether sufficient evidence exists to accuse someone of a crime and subject that person to criminal prosecution (See People v. Thompson, 22 NY3d 687, 697 [2014]). Grand jury proceedings are governed by CPL Article 190, which lays the framework for which the People must follow. It should be noted that, while a prosecutor may possess "broad powers and duties" and is afforded wide discretion in presenting cases to a grand jury, the "prosecutor's discretion during grand jury proceedings is not absolute." (People v. Huston, 88 NY2d 400, 406 [1996]; See CPL § 190.25[6]). In fact, in the context of a grand jury proceeding, "the prosecutor performs the dual role of advocate and public officer, charged with [*2]the duty not only to secure indictments but also to see that justice is done." (See People v. Lancaster, 69 NY2d 20, 26 [1986]. In these roles, the prosecutor "owes a duty of fair dealing to the accused." (See People v. Pelchat, 62 NY2d 97, 105 [1984]).
Further, inherent in this grand jury function, is a grand jurors' ability to fairly evaluate the evidence which includes making determinations as to the witness' credibility and truthfulness, using the same factors used for petit jurors. These factors include, but are not limited to, observing the witness' demeanor, facial expressions, body language, gestures and tone during their testimony (See CJI2d[NY] Credibility of Witnesses). Similarly, because a grand jury is investigative by nature, grand jurors are afforded the opportunity to ask questions, or seek clarifications, on any evidence or testimony submitted, and may vote to hear additional evidence (See CPL § 190.05; CPL § 190.50[3]; See also People v. Adessa, 89 NY2d 677, 682 [1997]["it is beyond dispute that the Grand Jury has the dual role of investigating crimes and protecting citizens from unfounded prosecutions and governmental overreaching."]; People v. Salvador, 176 Misc 2d 915, 918 [Sup Ct. Queens Cnty. 1998][finding that the prosecutor's decision to excuse the defendant without permitting the grand jurors the opportunity to question her impaired the investigating functions of the Grand Jury]). Moreover, because of this investigatory function, and the need for the grand jurors to assess credibility, CPL Article 190 spells out specific criteria that must be met before a witness is able to testify in a manner other than in person before the grand jury, including a requirement that any such testimony be videotaped. Indeed, in those very limited circumstances where videotaped testimony is permitted, the grand jurors are required by statute to be given the opportunity to ask the witness questions, either by subsequent videotaped interview, or by a vote to require the witness to appear in person (CPL §190.32). Thus, inherent in CPL Article 190, is the need for all critical and essential witnesses to testify in person before a grand jury.
CPL § 190.05 also requires a grand jury to consist of a quorum of at least 16, and no more than 23 grand jurors (See CPL § 190.05; CPL § 190.25[1]). While a quorum is required to present evidence to a grand jury, CPL § 190.25[1] only requires a vote of 12 grand jurors to indict a defendant. These 12 jurors are required to have "heard all the critical and essential evidence presented and the charge" (People v. Collier, 72 NY2d 298, 299 [1988]). Here, the People concede in their moving papers that the testimony of the complainant and the two outcry type witnesses was "essential and critical evidence in the proceeding." The People further concede that their instruction to the grand jury allowed grand jurors who only heard a readback of this "critical and essential" testimony and did not see and hear the witnesses testify before the grand jury, to vote as to whether to indict the defendant.
Thus, the sole issue in this case is whether a readback of grand jury testimony can be deemed the functional equivalent to hearing in-person testimony that would qualify a grand juror to be able to vote in a particular case. While there is no caselaw directly on point on this issue, given the purpose and function of a grand jury proceeding, the important role each grand juror plays in investigating and examining the evidence, and due process considerations surrounding criminal matters, it is clear that a readback cannot be deemed the functional equivalent in-person testimony that would allow grand jurors to vote after only hearing a readback of this critical and essential evidence.
Indeed, while not directly addressing this exact issue, several New York Courts have addressed issues surrounding grand jury presentations that occur over several days and how to determine if only qualified grand jurors voted (See People v. Collier, 72 NY2d 298 [1988]; [*3]People v. Saperstein, 2 NY2d 210 [1957]; People v. Brinkman, 309 NY 974 [1956]; People v. Infante, 511 NYS2d 293 [2d Dept 1987]; People v. Perry, 199 AD2d 889 [3rd Dept 1993]). While not explicitly holding that the grand jurors are required to have heard the in-person testimony of the critical and essential witnesses, the focus on each of the courts' review in those cases was whether at least 12 grand jurors were physically present on the dates that all critical and essential evidence was heard (See People v. Saperstein, 2 NY2d at 218-9 [analyzing each date that evidence was presented and finding that there were more than twelve voting grand jurors who heard "all the really material testimony," and that the defendant was not prejudiced when some voting grand jurors were absent on days when testimony regarding "background and explanatory material" was proffered]; People v. Brinkman, 309 NY at 975-6 [finding that the indictment was valid since "the only testimony not heard by at least twelve of the jurors was of an incriminating nature but was not necessary to the finding of the indictment as it was merely repetitious."]; People v. Perry, 199 AD2d 889 [3rd Dept 1993][finding that there were twelve grand jurors who heard the essential and critical evidence after analyzing each date that essential and critical evidence was presented and noting that, despite the defendant's contentions, evidence presented on two dates was not essential and critical, but "merely repetitious"]; See also People v. Collier, 72 NY2d at 303-4 [explaining that the requirement that a quorum of sixteen jurors be present at all times "provides a margin for the inevitable absence of some jurors" and "has a prophylactic effect of substantially increasing the probability that the requisite [twelve] jurors will ultimately be available to deliberate and vote when it is time to do so"]; People v. Infante, 124 AD2d 86 [2d Dept 1987][same]). Inherent in each of these decisions, and what common-sense dictates, is that the People cannot provide a readback of the prior critical and essential testimony before the grand jury in order to bolster, or add to, the number of grand jurors that are able to vote on a particular case. In doing so, the People would impair the integrity of the grand jury proceeding to such a degree that the exceptional remedy of dismissal would be necessary.
The People's arguments that the procedures employed in the grand jury when a superseding indictment is presented supports their position that critical and essential evidence can be presented by a readback is flatly contradicted by relevant statute and caselaw. More specifically, pursuant to CPL § 200.80, the People may file a superseding indictment which will substitute an earlier indictment so long as the charged offenses are the same. It is true that during the presentment of the superseding indictment the People do not have to recall witnesses who have previously testified. However, the case law is clear that this only stands true if there are 12 or more grand jurors present during the superseding indictment who were present and heard live, in-person testimony of the essential and critical evidence during the initial indictment (See People v. Salerno, 3 NY2d 175, 177-8 [1957]; People v. Coppins, 173 AD3d 1459, 1461 [3d Dept 2019]).
The People's other argument that CPL § 190.32 supports their position that a readback of prior in-person testimony can serve as a substitute to live, in-person testimony to enable grand jurors to vote is equally flawed. Indeed, as is set forth more fully above, CPL § 190.32 actually cuts against the People's position since in order to utilize videotaped testimony, the assistant district attorney must abide by the very detailed and strict procedures set forth in CPL § 190.32[5]. These requirements include specific parameters regarding what must be said at the start and end of the recording by both the operator of the video and the assistant district attorney, what must be on display as the witness is examined, and who an oath must be administered to. And, for witnesses that are not child witnesses, the People must get permission from the court to [*4]provide a recording to the grand jury. Further, the use of this videotape in no way limits the power of the grand jury to pose questions to the witness, which may require the assistant district attorney to conduct another video recording, or to subpoena the witness to appear, if the grand jury votes to hear from the witness in person (See People v. Dukes, 156 Misc 2d 386, 390-1 [Sup Ct. Kings Cnty. 1992]; People v. Rich, 137 Misc 2d 474, 476-7 [Sup Ct. Monroe Cnty. 1987]).
In the instant case, the People concede that they allowed grand jurors that did not see and hear the in-person testimony of the complainant and two other essential witnesses, to vote on whether to indict the defendant. There can be no more critical or essential evidence presented to the grand jury than the person accusing the defendant of these crimes. These grand jurors, who only heard a readback of this testimony and did not see and hear the witnesses testify in person, could not properly evaluate the witnesses' demeanor, facial expressions, body language, gestures, and tone. Thus, these grand jurors could not properly make a credibility determination based solely upon a readback of this testimony and therefore were unqualified to vote.
Moreover, there was absolutely no reason for the People to allow these additional grand jurors to vote since they already had 12 grand jurors that had been physically present and had heard all the witnesses testify in person and therefore were qualified to vote in this case. Indeed, the People further compounded this error by not only conducting a readback without the grand jurors requesting one, but the People only readback the witnesses proffered by the People, and not the testimony of the defendant or any of his witnesses. In reading back only some of the testimony, particularly when there was no request by the grand jury to do so, the People's actions could be viewed as an attempt to persuade the grand jury to indict, rather than present the evidence in a fair and impartial manner as required. In doing so, the People went outside the bounds of their role as the legal advisor and usurped the fact-finding function of the grand jury (see e.g. People v. Douglas, 226 AD3d 1162, 1163 [3d Dept 2024 [prosecutor's role is to "fairly present evidence" that is "sufficient to make out a prima facie case."].
Accordingly, the People's unprompted readback of critical and essential evidence, coupled with the instruction that grand jurors that only heard this readback and were not actually present on the days those witnesses testified in-person before the grand jury were now able to vote on the indictment, was improper and rendered the indictment in this case defective. Moreover, because these errors were significant and impaired the integrity of the grand jury to such a degree, there is a substantial risk that the defendant was prejudiced. As a result, the exceptional remedy of dismissal of the indictment is warranted. (See CPL § 210.20[1][c]; CPL § 210.35[5]).

Conclusion
The defendant, Riccardi Jules' motion to dismiss the indictment is granted without prejudice to resubmit to a new grand jury pursuant to CPL § 210.20(4).
This opinion constitutes the decision and Order of the court.
Dated: October 17, 2025
Kew Gardens, New York
Hon. Gia Morris, AJSC

Footnotes

Footnote 1:A redacted copy of the grand jury attendance log, which does not contain any identifying information pertaining to the grand jurors, will be maintained in the Court file, and be made available for viewing by either party.