459 S.E.2d 139

**STATE of West Virginia ex rel. JOHN DOE, Jane Doe, and Jane Roe, Relators,**

v.

**Honorable Joseph G. TROISI, Special Judge of the Circuit Court of Kanawha County, and Michele Rusen, Special Prosecuting Attorney for Kanawha County, Respondents.**

No. 22817.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided May 18, 1995.

---

30

Lonnie C. Simmons, DiTrapano & Jackson, Charleston, for relators.

Michele Rusen, Sp. Pros. Atty. for Kanawha County, Parkersburg, for respondents.

CLECKLEY, Justice:

In this original proceeding in prohibition, the relators request that we broaden the attorney-client privilege by creating a *per se* preliminary standard for grand jury proceedings that requires prosecutors to show a compelling need for certain information before a subpoena issued for the attorneys of investigated clients may be enforced. We decline to create such a far reaching standard out of fear that such an expansive rule would impede the grand jury's investigative duties. We recognize that because of the inherent conflict between the attorney-client privilege and the grand jury, it is necessary to grant the circuit court broad discretion to require a preliminary showing if there is a suspicion that the subpoena power is being misused.

## I.

### FACTS

The issues asserted in this original proceeding arise from a special grand jury proceeding before the respondent, the Honorable Joseph G. Troisi. Judge Troisi was appointed as a Special Judge for Kanawha County by an administrative order of this Court dated June 30, 1994, following the voluntary disqualification of all the Kanawha County Circuit Judges. The respondent, Michele Rusen, was appointed as Special Prosecutor by Judge Troisi after the Office of the Kanawha County Prosecuting Attorney disqualified itself from the investigation or prosecution of Target Client and Target B.[1] A special grand jury is currently investigating alleged criminal activities by Target Client and Target B. The relators in this case are John Doe, an attorney currently representing Target Client; Jane Doe, an investigator at John Doe's firm; and Jane Roe, a former associate in John Doe's law firm.

After Target B was accused of sexually harassing certain court employees and others, an investigation was conducted. The matter was then referred to the Judicial Hearing Board. Target B ultimately admitted to some of these allegations prior to resigning his position as a circuit judge.

Target B allegedly sexually harassed and abused Target Client on August 5, 1992, in his chambers. Target Client executed an affidavit detailing this harassment on August 5, 1992. Following an unusual series of events, in April, 1994, Target Client allegedly attempted to extort money from Target B in exchange for her silence about the harassment. Target Client was arrested by the Federal Bureau of Investigations following the extortion attempt and was represented by John Doe's law firm. The federal warrant for Target Client's arrest was later dismissed. Sometime following her arrest, Target Client, with the assistance of John Doe's law office, released a copy of the aforementioned affidavit and a press release. The press release and the affidavit were published in substantial part in the *Charleston Daily Mail*, a newspaper of general circulation.

Following the February special grand jury proceedings and further investigation, subpoenas were issued for John Doe, Jane Doe, and Jane Roe. The subpoenas were returnable for the second scheduled appearance of the grand jury on March 13, 1995. All the relators filed motions to quash the subpoenas. Jane Roe's motion to quash was heard

---

1. In compliance with the secrecy requirements for grand jury proceedings under Rule 6 of the West Virginia Rules of Criminal Procedure, we use pseudonyms for the targets of the investigation and the attorneys and the investigator who are the relators in this case.

*in camera* by Judge Troisi on March 13, 1995.

At the *in camera* hearing, Judge Troisi agreed with the relator, Jane Roe, that the State must make a preliminary showing of the "purpose of ... [the] grand jury investigation" and the relevance and need for the requested testimony. The special prosecutor explained the purpose of the testimony was to elicit information surrounding Target Client's affidavit. Judge Troisi, satisfied with the special prosecutor's explanation, refused to quash the subpoena for Jane Roe. However, Judge Troisi stated his refusal to quash the subpoena in no way abrogated Jane Roe's right to assert the attorney-client privilege, and he would evaluate the assertion of this privilege on a question-by-question basis in an *in camera* hearing at the conclusion of the questioning of this witness. A similar hearing was held to consider John Doe's and Jane Doe's motions to quash. As with Jane Roe, Judge Troisi required the special prosecutor to make a preliminary showing and, once again, he found an adequate showing had been made to defeat the motions to quash.

Thereafter, Jane Roe was called to testify before the special grand jury. During her testimony, Jane Roe asserted the attorney-client privilege a number of times. The court held an *in camera* hearing to determine whether the privilege applied to the questions raised. During the course of the hearing, John Doe and Jane Doe were invited to participate in the *in camera* hearing. The court directed that Jane Roe's testimony be transcribed, and then scheduled another hearing for March 17, 1995, to consider the scope of the waiver of the attorney-client privilege.

As this Court interceded and issued a rule to show cause on or about March 14, 1995, the hearing scheduled for March 17, 1995, was not held. Jane Roe has testified, but has not been required to answer any questions where she asserted the attorney-client

privilege. The special grand jury has taken no action that would render these proceedings moot.

## II.

## DISCUSSION

### A.

### *Writ of Prohibition*

■ We must first consider whether a writ of prohibition is an appropriate remedy for the parties in this case. As a recent practice, we have refused to exercise original jurisdiction to issue a writ of prohibition[2] when disputes are purely factual or where the issues raised are matters within the trial court's discretion and jurisdiction. *See State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992). This limitation is no accident, but instead flows from deliberate policy decisions from this Court and the United States Supreme Court which have restricted the granting of writs of prohibition to cases of an extraordinary nature. *State ex rel. Allen v. Bedell,* 193 W.Va. 32, 36–39, 454 S.E.2d 77, 81–84 (1994) (Cleckley, J., concurring). *See Ex parte Collett,* 337 U.S. 55, 72, 69 S.Ct. 944, 953, 93 L.Ed. 1207, 1217 (1949), *quoting Ex parte Fahey,* 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041, 2043 (1947) (" '[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes' "). In fact, in Syllabus Point 12 of *Glover v. Narick,* 184 W.Va. 381, 400 S.E.2d 816 (1990), we repeated our general standard in prohibition cases:

> " 'In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohi-

---

2. This Court's original jurisdiction in matters involving a writ of prohibition stems from Section 3 of Article VIII, which reads in pertinent part: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus,

mandamus, prohibition, and certiorari." *See also* W.Va.Code, 53–1–1, *et seq.* (refining the judiciary's general grant of power over the issuance of writs of prohibition).

bition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.' Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979)."

*See also State ex rel. Elish v. Wilson,* 189 W.Va. 739, 434 S.E.2d 411 (1993); *State ex rel. Parkland Development, Inc. v. Henning,* 189 W.Va. 186, 429 S.E.2d 73 (1993); *Ash v. Twyman,* 174 W.Va. 177, 324 S.E.2d 138 (1984).

The relators do not question the jurisdiction of the lower court, but are seeking prohibition on the ground that the special prosecutor[3] and the special judge[4] have exceeded their legitimate powers by issuing the subpoenas and by refusing to quash the subpoenas, respectively.[5] When jurisdiction is not at issue, then the issuance of a writ is discretionary. *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973). Thus, the exercise of our original jurisdiction is discretionary and is governed by the practical circumstances of the case. Before we exercise this discretion-

ary power, we must apply the aforementioned standards and ascertain whether there is a clear-cut error that needs resolution where alternate remedies are inadequate and judicial economy demands resolution. *See Wood County Court v. Boreman,* 34 W.Va. 362, 12 S.E. 490 (1890) (writ of prohibition should lie only when extraordinary circumstances elude normally available remedies); *accord State ex rel. Gordon Memorial Hosp. v. W.Va. State Bd. of Examiners,* 136 W.Va. 88, 66 S.E.2d 1 (1951).

We recognize that an order denying a motion to quash a subpoena is interlocutory in character and, thus, usually is not reviewable in an original proceeding. More specifically, challenging a circuit court's refusal to quash a subpoena because of an asserted testimonial privilege is not reviewable until after the witness refuses to testify or to disclose relevant documents and is cited for contempt. *See* 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 1.59 (1994). However, in prior cases, we have entertained an original proceeding in connection with an interlocutory order when the order raised a substantial issue relating to the administration of criminal justice or placed a litigant at an unwarranted disadvantage in a pending action.[6] Additionally, an increasing number

---

**3.** It is questionable whether a writ of prohibition is an appropriate remedy for the special prosecutor's actions in this case. In *State ex rel. Miller v. Smith,* 168 W.Va. 745, 756, 285 S.E.2d 500, 506 (1981), we stated that prohibition was only appropriate for judicial officers and that prosecutors are executive officers who are "not subject to the judicial writ of prohibition" when performing their executive duties. *See also State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984). Issuing a subpoena is part of a prosecutor's executive function. Therefore, a writ of prohibition is generally inappropriate unless a prosecutor is abusing the subpoena power. However, prohibition will lie if a prosecutor exceeds his or her jurisdiction and usurps the judicial power of the circuit court or of the grand jury. *Accord McGinley v. Hynes,* 51 N.Y.2d 116, 432 N.Y.S.2d 689, 412 N.E.2d 376 (1980) (finding the issuance of a writ of prohibition is appropriate in extraordinary circumstances against an inferior judicial tribunal or officer, but questioning whether a writ of prohibition is ever appropriate when prosecutor is carrying out purely investigatory function as opposed to quasi-judicial or judicial behavior). We will assume for the purposes of this opinion that the issuance of a writ of prohibition is appropriate because nei-

ther party argues that the special prosecutor is not subject to the writ.

**4.** We also note that extraordinary writs such as prohibition and sometimes mandamus " 'have the unfortunate consequence of making the ... [trial] court a litigant.' " *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725, 732 (1976). (Citation omitted). In the future, both bar and bench should give serious consideration to a rule under which the trial judge would no longer be treated as a respondent.

**5.** Although the relators do have the right to raise the attorney-client privilege on behalf of Target Client, Target Client should have been made a party to this proceeding since the attorney-client privilege belongs to Target Client. At oral argument, the relators advised this Court that their client is aware of these proceedings and has approved the action taken on her behalf.

**6.** *See State ex rel. Register–Herald v. Canterbury,* 192 W.Va. 18, 449 S.E.2d 272 (1994) (prohibition granted to reverse order constituting prior restraint against newspaper); *State ex rel. Tyler v.*

of courts now permit clients to intervene and challenge the subpoena of an attorney or other custodian of documents where a privilege may be asserted. *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Jurisdictions have been reluctant to review the refusal to quash a subpoena because it is frequently unclear what relevance the privileged information will actually have in the underlying case. Constant tampering with the discretionary function of a lower tribunal could result in unjustifiably impinging discretionary power. *Brecht v. Abrahamson,* 507 U.S. 619, ——, 113 S.Ct. 1710, 1720–21, 123 L.Ed.2d 353, 371 (1993), *quoting Engle v. Isaac,* 456 U.S. 107, 127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783, 800 (1982) ("'[l]iberal allowance'" of extraordinary writs "'degrades the prominence of the trial'").

The exercise of original jurisdiction is appropriate under the circumstances of this case. The order denying the motion to quash not only poses a question of significant importance to the administration of justice in West Virginia, but also places the relators, as counsel and investigator of Target Client, in an ethical quandary as to the continued representation of Target Client in future prosecutions. We, indeed, are mindful of the competing interests involved and are compelled to consider the parties' contentions because of the possible infringement on the attorney-client privilege.[7]

Finally, we note the judiciary has general supervisory authority to ensure fairness in grand jury proceedings. Central to our analysis are those ethical considerations that necessarily arise when an attorney of record is subpoenaed by the prosecutor in order to give testimony that could be adverse to the subpoenaed attorney's client who is a target of the grand jury. Moreover, the denial of a motion to quash the subpoena could result in the disqualification of the subpoenaed attorney from future representation of the client. Such a practice, if not carefully monitored by the judiciary, could be converted into a device for forcing the disqualification of particular lawyers from representing certain clients.

Out of consideration for the aforementioned points, we find that in situations where the refusal of a motion to quash a subpoena based on the attorney-client privilege could result in imminent and irreparable harm, petitioning for a writ of prohibition is the appropriate method for challenging the subpoena.

### B.

### *The Grand Jury and the Attorney–Client Privilege*

There are two broad and competing interests at risk in this case—the power of the grand jury and the attorney-client privilege. Historically, this Court has jealously guarded the parameters of both the grand jury and the privilege and, in many of our cases we have attempted to shore the boundaries. However, we have never specifically developed what standards, if any, are required when these two competing interests directly conflict. The facts of this case compel us to address such issues. Thus, we must determine whether the attorney-client privilege is itself an adequate protection for client confi-

---

*MacQueen,* 191 W.Va. 597, 447 S.E.2d 289 (1994) (prohibition used to review disqualification of prosecutor's office); *State ex rel. Leach v. Schlaegel,* 191 W.Va. 538, 447 S.E.2d 1 (1994) (prohibition granted to prevent relitigation of case foreclosed because of collateral estoppel); *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994) (prohibition used to review decision on lawyer's disqualification).

7. There is no right for a direct appeal for the interested parties once the motions to quash the subpoenas are refused. Of course, if the special grand jury indicts neither Target Client nor Target B, there would be nothing to appeal. However, applying the traditional standards, if either of the targets is indicted, the party would be required to wait for a conviction before raising the issue of testimonial privileges during the grand jury setting. Infringing upon the attorney-client privilege even at this preliminary stage of the proceedings could result in irreparable harm. An attorney or an attorney's agents testifying against a client during any proceeding could result in disqualification of the attorney at the trial stage and could cause a client to distrust his or her attorney. Ultimately, this action could lead to clients' refusing to disclose pertinent information to their attorneys out of fear the attorneys may disclose the information later.

dences in grand jury proceedings or whether special preliminary standards must be satisfied prior to subpoenaing an attorney of a putative defendant.

We begin our analysis with a discussion of the general power and authority of the grand jury and the justifications at the heart of the attorney-client privilege. The grand jury was originally created to carry out a vital and unique function in our criminal justice system. It is charged with the duty to investigate the possibility of criminal behavior while "protecting the innocent from unjust accusation." I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at I–617 (1993). *See also State ex rel. Miller v. Smith*, 168 W.Va. 745, 751, 285 S.E.2d 500, 504 (1981) (the dual function of the grand jury is to "operate both as a sword, investigating cases to bring to trial persons accused on just grounds, and as a shield, protecting citizens against unfounded malicious or frivolous prosecutions"). In order to carry out its truth-seeking function, the grand jury is necessarily vested with broad investigatory powers. Significantly, a grand jury is not required to wait for a case or controversy before acting; it can in fact " 'investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' " *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795, 805 (1991), *quoting United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401, 411 (1950). A grand jury's quest for information ends once an offense is identified or a determination made that no crime was committed.

Pursuant to the mandates of the West Virginia Constitution, we have a "sworn duty to support the fundamental principles upon which our legal institutions are founded." *State ex rel. Miller v. Smith*, 168 W.Va. at 752, 285 S.E.2d at 504. Indeed, this Court has striven to maintain the integrity of the grand jury by following historical models of grand jury functions in the hopes that our grand jury system does not deteriorate into the functional equivalent of a rubber stamp for a prosecutor. *State ex rel. Miller v. Smith, supra* (as a result of the increased use of testimonial privileges, grand juries have lost their independence and become dominated by prosecutors).

A grand jury's powers are so vast that many of the usual trial court procedures are suspended for grand jury proceedings. *See State ex rel. Casey v. Wood*, 156 W.Va. 329, 193 S.E.2d 143 (1972). *See also United States v. R. Enterprises, Inc., supra* (noting that among other trial court standards, the exclusionary rule does not apply in grand jury proceedings). For example, a putative defendant in a grand jury proceeding does not have the right to have counsel present, unlike a defendant's constitutional right to counsel after indictment. *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985). Additionally, witnesses may be compelled to testify before a grand jury. Although various evidentiary restrictions applied during adversarial proceedings might "increase the likelihood of accurate determinations of guilt or innocence[,] ... [when applied to grand jury determinations, these restrictions] ... 'would result in interminable delay but add nothing to the assurance of a fair trial.' " *United States v. R. Enterprises, Inc.*, 498 U.S. at 298, 111 S.Ct. at 726, 112 L.Ed.2d at 805, *quoting Costello v. United States*, 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397, 403 (1956).

However, a grand jury's powers are not limitless and a circuit court not only has the power, but has an obligation to curb a grand jury's overreaching. *State ex rel. Casey v. Wood*, 156 W.Va. at 333, 193 S.E.2d at 145 (although there is usually no limit on the "character of the evidence that may be presented to a grand jury," the circuit court has the discretion to control the process and to rule on motions). *See also Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). *See also In re Grand Jury Subpoena (Legal Services Center)*, 615 F.Supp. 958, 962 (D.C.Mass.1985) (" '[t]he grand jury's right to every man's evidence is substantially limited only by express "constitutional, common-law or statutory [privileges and is also] subject to judges' supervisory powers" ' " (citations omitted)). A circuit court's inherent powers also extend to its

authority to stop prosecutorial abuse. As we noted in *Casey:*

"The grand jury is an arm or agency of the court by which it is convened and such court has control and supervision over the grand jury. *United States v. Smyth,* D.C., 104 F.Supp. 283 [ (N.D.Cal., S.D.1952) ]. A grand jury has no independent existence, but is a part of and adjunct to the court. *State ex rel. Martin v. Michell,* Fla.App., 188 So.2d 684 [ (1966) ]." 156 W.Va. at 333, 193 S.E.2d at 145.

As with other powers of the grand jury, the subpoena power is broad. Indeed, a grand jury's subpoena *duces tecum* carries with it a presumption of validity. *See In re Grand Jury Subpoena,* 920 F.2d 235 (4th Cir.1990). However, "[i]t should also be noted that a grand jury has no power to compel a witness to testify, but only the court can exercise such compulsion." *State ex rel. Casey v. Wood,* 156 W.Va. at 333–34, 193 S.E.2d at 145.

A grand jury's investigatory tasks must be balanced with other interests, including testimonial privileges like the attorney-client privilege. The policy considerations underpinning the attorney-client privilege directly conflict with the interests of the grand jury's truth-seeking function, considering the main purpose behind the privilege is to provide protection for client confidences. The relators ask us to decide whether the attorney-client privilege must give way to the interests of the grand jury. We are specifically asked to establish standards that must be satisfied before an attorney of a putative defendant is required to submit to a grand jury subpoena.

The attorney-client privilege was the first testimonial privilege ever established. The original rationale for the privilege, which was based on the "oath and honor of the attorney," permitted attorneys to control the privilege and hold client confidences to preserve the attorney's honor. I Franklin D. Cleckley, *Handbook on West Virginia Evidence* § 5–4(E)(1) at 560 (1994). *See also* 8 Wigmore, *Wigmore on Evidence* § 2290 at 542–43 (1961) (noting the history of the privilege and stating the privilege has been largely unquestioned dating from the reign of Elizabeth I).[8] The rationale behind the attorney-client privilege changed from an attorney-owned-honor-based privilege during the Eighteenth Century to the present instrumental rationale that now focuses on an attorney's need to be fully aware of the facts of a client's case in order to provide effective assistance. *See Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988); *Matter of Grand Jury Subpoena of Stewart,* 144 Misc.2d 1012, 545 N.Y.S.2d 974 (1989), *modified by* 156 A.D.2d 294, 548 N.Y.S.2d 679 (1989). This privilege is now under the exclusive control of the client rather than the attorney. Thus, the client has the privilege to refuse to disclose and to prevent others from disclosing the information conveyed. *State v. Douglass,* 20 W.Va. 770 (1882).

The present rationale for the privilege has been succinctly stated as being the desire to " [p]romote freedom of consultation of legal advisers by clients[. Therefore,] the apprehension of compelled disclosure by the legal advisers must be removed ... [and] the law must prohibit such disclosure except on the client's consent.' " 1 Scott N. Stone and Robert K. Taylor, *Testimonial Privileges* § 1.01 ·at 1–4 (1994), *quoting* 8 Wigmore, *Evidence* § 2291 at 545 (1961).[9]

The attorney-client privilege is a common law privilege that protects communications between a client and an attorney during con-

---

**8.** *But cf.* 24 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5472 at 71–72 (1986) (criticizing Wigmore's historical account of the privilege by claiming that Wigmore may have exaggerated the privilege's ancestry out of fear the privilege would not survive modern justifications without deeply rooted historical underpinnings).

**9.** For cases suggesting that full disclosure is a critical element to a successful attorney-client relationship, see *Upjohn Co. v. United States,* 449

U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591 (1981) (the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"); *Fisher v. United States, supra. But cf. Tornay v. United States,* 840 F.2d 1424 (9th Cir.1988) (certain disclosures like fee information would neither harm the attorney-client relationship nor result in less frank communication with clients).

sultations. *See* W.Va.R.Evid. 501 [10]; *State v. Fisher*, 126 W.Va. 117, 27 S.E.2d 581 (1943). This privilege protects the substance of communications [11]; therefore, the privilege extends to protect communication between the attorney and the agents, superiors, or attorneys in joint representation. *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir.1984), *vacated* 757 F.2d 600 (1985). *See also* Syl. pt. 3, *Marano v. Holland, supra* (the attorney-client privilege extends to others who are advised of confidential information at the direction of the attorney); *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (specifically noting the privilege applies to investigators).[12]

■ The scope of the attorney-client privilege is broad, but we have never held it to be unlimited. As stated previously, a subpoena *duces tecum* is presumed to be valid. Although a grand jury is not allowed to inquire into privileged information, the burden is on the party resisting the subpoena to show either that the subpoena is flawed or that there is some kind of privilege barring disclosure. *See In re Grand Jury Subpoena (Legal Services Center), supra.* Even in the cases where privilege is involved, the majority of courts require the privilege be asserted on a question-by-question basis instead of allowing the privilege to be used as a broad protection against being compelled to testify at all.[13] Traditionally, no witnesses, including attorneys, have enjoyed any special protection from grand jury subpoenas. *See In*

*re Grand Jury Matters,* 751 F.2d 13, 19 (1st Cir.1984) ("there can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury"); *United States v. Mackey,* 405 F.Supp. 854 (E.D.N.Y.1975) (training of attorneys makes an inadvertent breach unlikely). *See also* Syl. pt. 1, *In re Yoho,* 171 W.Va. 625, 301 S.E.2d 581 (1983) ("[f]ear of harm to one's safety cannot justify a refusal to testify before a grand jury").

■ The relators argue that an expansion of the attorney-client privilege is warranted when a putative defendant's counsel is subpoenaed. The relators fear the unbridled use of the subpoena power would not only severely damage the relationship between counsel and the client, but would ultimately lead to counsel's disqualification if the client is indicted. Essentially, we are asked to expand the traditional scope of the attorney-client privilege to make a *per se* rule that attorneys for clients under investigation cannot be subpoenaed unless the prosecutor makes a showing of compelling need and circumstances. As a general observation, we believe such an expansion is unwarranted in most cases. However, we recognize there are cases in which the probability may exist that the subpoena power is being used for improper purposes. Under such circumstances, the circuit court has inherent authority to require a showing of relevance and necessity (i.e., the inability to obtain the information from other sources) as a prerequisite to permitting use of the subpoena power.

10. Rule 501 of the Rules of Evidence reads as follows: "The privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law except as modified by the Constitutions of the United States or West Virginia, statute or court rule."

11. Although the attorney-client privilege is a rather broad doctrine, every kind of communication between a lawyer and a client is not privileged. There are certain requirements that must be satisfied before a communication is protected under this privilege: First, an attorney-client relationship must exist at the time of the communication; second, communication of some form must take place; third, the advice requested from the attorney must occur in the attorney's legal capacity; and, fourth, the information confided must be intended to be confidential. Fur-

thermore, there must be no evidence that the client intentionally waived the privilege. *See* I Franklin D. Cleckley, *Handbook on West Virginia Evidence* § 5–4(E)(2) (1994).

12. Therefore, the holding of this case will apply to the investigator Jane Doe.

13. *See In re Grand Jury Subpoena,* 831 F.2d 225 (11th Cir.1987) (blanket assertion of attorney-client privilege is inappropriate considering many of the documents subpoenaed may not be protected by the privilege); *LeBlanc v. Broyhill,* 123 F.R.D. 527 (W.D.N.C.1988) (an attorney must appear when subpoenaed because the attorney may be privy to information that is not available from another source). *See also* 1 Scott N. Stone and Robert K. Taylor, *Testimonial Privileges* §§ 1.59–1.63 (1994).

There is force to the relators' contentions, but, as suggested above, we believe on balance the remedy requested is excessive. The subpoena power does have the potential to destroy confidence and manipulate the criminal justice system if used with reckless abandon. The Colorado Supreme Court in *Williams v. District Court, El Paso County*, 700 P.2d 549, 555 (Colo.1985), *quoting In re Grand Jury Subpoena Served Upon John Doe*, 759 F.2d 968, 975 (2nd Cir.1985), *judgment vacated by* 781 F.2d 238 (1986), *cert. denied sub nom., Roe v. United States*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986), acknowledged the inherent tension between a grand jury's quest for knowledge and a client's right to certain confidences:

" 'In carefully weighing these important interests [the public interest in presenting all relevant information to the grand jury and the interest in preserving the attorney-client relationship under our adversary system of justice], two points support additional protection for the attorney-client relationship. First, the unbridled use of the subpoena would potentially allow the Government, in this and future cases, to decide unilaterally that an attorney will not represent his client. Such power of disqualification can undermine and debilitate our legal system by subjecting the criminal defense bar to the subservience of a governmental agent. The unrestricted exercise of this power without adequate justification does not strike us as necessary or indispensable in an adversary system of criminal justice, particularly when we consider the significance of the attorney-client relationship and the need for an independent bar. Second, as noted earlier, the right to have counsel of one's choosing in the defense of a criminal charge is of constitutional dimensions. Thus, any potential infringement of this right must only be as a last resort.' "

*See also In re Grand Jury Investigation (Sturgis)*, 412 F.Supp. 943, 945–46 (E.D.Pa. 1976).

Compelling counsel to testify could undermine a target client's trust, but creating the broad prophylactic rule desired by the relators goes far beyond what is necessary to protect that sacred trust. "Where the attorney is the sole source of information … a rule severely restricting grand jury access to that attorney's testimony may in turn severely cripple any attempted investigation." Michael F. Orman, *A Critical Appraisal of the Justice Department Guidelines for Grand Jury Subpoenas Issued to Defense Attorneys*, 1986 Duke L.J. 145, 150. Giving defense attorney's "status" protection would completely eradicate any balancing of competing interests that is presently reflected in the application of the privilege. Under the relators' theory, information could be revealed only if there is a compelling need. Indeed, it would be difficult for prosecutors ever to satisfy the compelling need test if all the information is controlled by opposing counsel. As several courts have recognized, a broad privilege could create incentive to use attorneys as "conduits of information or of commodities necessary to criminal schemes." *In re Shargel*, 742 F.2d 61, 64 (2nd Cir.1984).

One of the relators' main arguments in support of the preliminary standards is that an attorney might ultimately be disqualified if he or she is compelled to testify, thus, violating the putative defendant's Sixth Amendment right to counsel. Not only is this a speculative assumption, there is no absolute right to counsel of choice. *See Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (where defendant waived any conflict of interest that might exist by using same attorney as codefendant, Supreme Court found district court has discretion to refuse waiver of conflicts of interest). Additionally, there is no Sixth Amendment right to counsel at the grand jury stage. The right to counsel under the Sixth Amendment "attaches only at or after the time that adversary judicial proceedings have been initiated[.]" *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972).

Recognizing the inherent conflict between grand jury proceedings and the attorney-client privilege does not require us to create new broad standards regulating the subpoena power. The traditional balancing approach of weighing the quest for the truth

against the attorney-client privilege adequately protects the client's interests without completely impeding the grand jury's investigation in most cases. In case of an abuse of subpoena power, a circuit court has the inherent authority to take action, as was done here, to prevent the grand jury or the prosecutor from using a subpoena to defeat the ends of justice. To be specific, a circuit court has an arsenal of remedies at its disposal to control its courtroom, including requiring a preliminary showing when there is a suspicion of abuse.

The blanket assertion of the attorney-client privilege is highly disfavored in the majority of jurisdictions. *See Matter of Grand Jury Subpoenas*, 241 N.J.Super. 18, 574 A.2d 449 (1989) (noting that blanket motions are inadvisable); *In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039 (11th Cir.1990). In *United States v. Perry*, 857 F.2d 1346, 1350 (9th Cir.1988), *aff'd by* 940 F.2d 670 (9th Cir.1991), quoting *In re Grand Jury Matters*, 751 F.2d at 19, the Ninth Circuit refused to create blanket protection because there is no absolute right to counsel and the " 'grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed.' " Finding various United States Supreme Court cases persuasive, the Third Circuit held it was unwise to place substantial restraints on the grand jury. *Baylson v. Disciplinary Bd. of Supreme Court of Pa.*, 975 F.2d 102 (3rd Cir.1992). The *Baylson* court felt that many of the restrictions—including preliminary showings—that were valid for adversary proceedings should not extend to the grand jury context. *See also In re Grand Jury Subpoena (Battle)*, 748 F.2d 327 (6th Cir.1984); *In re Hergenroeder*, 555 F.2d 686 (9th Cir.1977); *In re Special Sept. 1983 Grand Jury (Klein)*, 608 F.Supp. 538 (S.D.Ind.), *aff'd sub nom. Matter of Klein*, 776 F.2d 628 (7th Cir.1985). While we agree with the tone of the majority of courts, we refuse to adopt fully their stance on the attorney-client privilege because there may be exceptional circumstances where a prelim-

inary showing might be necessary to curb injustice.

The few supporters of a preliminary showing requirement stress the need for an independent defense bar and the fear of Sixth Amendment violations to justify the imposition of a preliminary standard. In *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005, 1010 (4th Cir.), *vacated on other grounds*, 697 F.2d 112 (4th Cir.1982), the Fourth Circuit stated:

> "We recognize that normally a subpoena is presumed to be regular, and that the subpoenaed party has the burden of showing that the information sought is privileged or that there has been an abuse of the grand jury process.... Where the attorney for the target of an investigation is subpoenaed however attorney-client privilege considerations and Sixth Amendment interests arise automatically and a preliminary showing must be made by the government before the attorney can be forced to appear before the grand jury." (Citation omitted).

*See also United States v. Klubock*, 639 F.Supp. 117 (D.Mass.1986) (upholding rule making it unprofessional conduct for a prosecutor to issue subpoena for defense counsel without prior court approval), *aff'd* 832 F.2d 649 (1st Cir.), *aff'd en banc by an equally divided court*, 832 F.2d 664 (1st Cir.1987); *In re Grand Jury Subpoena (Legal Services Center)*, *supra*; *Matter of Grand Jury Investigation*, 407 Mass. 916, 917–18, 556 N.E.2d 363, 364–65 (1990) (reiterating previous standard that it " '[i]s unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness.' " (Citations and footnotes omitted)).

We find the minority standard of requiring a preliminary showing each time a defense attorney is subpoenaed is neither necessary nor desirable. Therefore, we reject the extremes of both the minority and majority views and adopt a more centralist view.[14]

---

**14.** We find support for this viewpoint in *In re Grand Jury Proceedings*, 567 F.2d 281, 283 (5th

Cir.1978) ("[t]his court has decided it will not impose such a [preliminary showing] require-

We hold that, as a general rule, the attorney-client privilege is adequate protection of client confidences even in the context of a grand jury proceeding. We further hold there is no need to quash a grand jury subpoena simply because it is issued to an attorney of an individual under investigation. Once properly invoked, the circuit court has discretion to decide on a question-by-question basis whether the privilege was properly asserted during the grand jury proceedings. If it is apparent that a subpoena was issued for improper reasons, a circuit court has the discretion and inherent authority to require a prosecutor to make a preliminary showing of relevance and inability to obtain the disputed material from another source.

Ever mindful of the competing interests at stake in this case, we feel that allowing a circuit court to determine on a case-by-case basis when to apply preliminary standards appropriately vests power on the spot in a circuit judge and adds another adequate check on prosecutorial misconduct. Vesting such control in the circuit court permits the attorney-client privilege and the grand jury to function as intended, while providing extra protection only in those situations that require special attention.

After determining that a preliminary showing may be required under certain circumstances, we must now turn to the question of what the appropriate standards are for a circuit court to apply once it determines there is a need for the preliminary showing. The relators assert that we should require the prosecution to make a showing of compelling need. However, we reject this standard because it confers almost absolute status protection for attorneys of investigated clients

once a circuit court determines that a preliminary showing is appropriate. As suggested above, we refuse to create such an overinclusive and unnecessary standard. We believe the attorney-client privilege protects the interests of the client in most cases without completely restricting the grand jury's investigation.[15]

■ Rather, the better standard is to require the prosecution to make a showing of relevance and of the inability reasonably to obtain the requested information from any other source. This standard forces the prosecution to come forward with information that is relevant to the proceedings and to demonstrate that the information is otherwise unobtainable. Requiring the requested information to be unobtainable is key to the preliminary showing requirement and is intended to require a prosecutor to be selective regarding issuing subpoenas in doubtful cases. Once a prosecutor shows the requested information is exclusively within the control of defense counsel and is relevant to the proceedings, the grand jury's investigative needs override concerns about weakening the attorney-client relationship as a result of disclosure. Adopting this somewhat milder standard than the one requested by the relators gives the circuit court the opportunity to ferret out prosecutorial misconduct without forcing the prosecution to perform an almost impossible task.

■ In this case, Judge Troisi required the prosecution to make a preliminary showing of the purpose of the investigation and the relevance of and need for the information.[16] Judge Troisi required this showing

---

ment without some showing of harassment or prosecutorial misuse of the system"). *See also In re Grand Jury Investigation (United States v. McLean)*, 565 F.2d 318 (5th Cir.1977).

**15.** Most of the cases cited by the relators to support their argument for a compelling needs requirement are cases in which various courts required a showing of compelling need in a trial situation as opposed to a grand jury proceeding. Requiring a showing of compelling need in adversary proceedings is understandable considering there are greater interests at stake. *See United States v. R. Enterprises, Inc., supra* (many of the trial court standards, including those governing the issuance of subpoenas, do not apply in

the grand jury context). For example, by the time of trial, a defendant's Sixth Amendment rights have fully attached and the possibility of disqualification of defense counsel if the defense counsel testifies is no longer speculative. Furthermore, "[t]he serious risk that such a practice poses to the integrity of the lawyer-client relationship in the administration of criminal justice leads us to conclude" that severe restrictions on the subpoena power are justified. *Williams v. District Court, El Paso County*, 700 P.2d at 555.

**16.** During the *in camera* hearing on Jane Roe's motion to quash, the circuit court announced the prosecution would be required to make the following preliminary showing:

**40**

out of concern for the constitutional rights implicated by the issuing of a subpoena to the attorney of an investigated client. We find Judge Troisi applied the correct standard and did not abuse his discretion.[17]

### III.

### CONCLUSION

In this case, the relators' request for blanket protection of the attorney-client relationship is unnecessary and the specific facts of this case do not necessitate the issuance of the writ of prohibition.

Writ denied.

BROTHERTON, J., did not participate.

MILLER, Retired J., and SPAULDING, J., sitting by temporary assignment.

---

"I do believe, however, that based on the circumstances I have articulated that the State is or should be required to make some sort of preliminary showing to the Court as to, one, the purpose of this grand jury investigation; two, the relevance of the expected testimony of this witness as to the purpose of that investigation; and three, the need of the government for the testimony of this witness in order to develop that relevant information[.]"

17. Although we leave the ultimate decision about the existence of misconduct to the circuit court, we wish to make it clear the circuit court has the authority to inquire into any ulterior motives of the prosecuting attorney for issuing these subpoenas. Additionally, because of an incomplete record, we will not address the issue of whether any of the relators can assert the attorney-client privilege to the questions asked. Two of the relators have not testified and, therefore, have not had the opportunity to assert the privilege.