508 S.E.2d 628

**WEST VIRGINIA DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY, DIVISION OF JUVENILE SERVICES, and Phyllis H. Carter, Director, Division of Juvenile Services, Petitioners,**

v.

**The Honorable Irene BERGER, Judge of the Circuit Court of Kanawha County, Respondent.**

No. 25140.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1998.

Decided Oct. 2, 1998.

Dissenting Opinion of Justice Starcher Nov. 9, 1998.

Starcher, J., issued dissenting opinion.

Darrell V. McGraw, Jr., Attorney General, Diana P. Fisher, Assistant Attorney General, Charleston, West Virginia, Attorneys for the Petitioners.

Jon R. Blevins, Assistant Prosecuting Attorney, Charleston, West Virginia, Attorney for the Respondent.

DAVIS, Chief Justice:

In this original proceeding for a writ of prohibition, the petitioner, West Virginia De-

partment of Military Affairs and Public Safety, Division of Juvenile Services [hereinafter "the Division"], requests this Court to prohibit the respondent, the Honorable Irene Berger, Judge of the Circuit Court of Kanawha County, from requiring the Division to transport juveniles to and from court appearances during such juveniles' detention prior to adjudication of delinquency. We have thoroughly considered this petition. We conclude that the writ should be denied.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to this petition for a writ of prohibition involve two juveniles. One juvenile was the subject of a detention order placing him/her at the West Central Juvenile Detention Center in Parkersburg, West Virginia [hereinafter "West Central"], pending disposition of a delinquency petition.[1] The detention order directing the juvenile's placement at West Central reveals that the Kanawha County Sheriff's Department was charged with initially transporting the juvenile to West Central.

The second juvenile was the subject of a detention and bond order placing him/her at the Southern Regional Juvenile Detention Center in Princeton, West Virginia [hereinafter "Southern"], pending further court proceedings. In addition to placing the juvenile at Southern, the detention and bond order directed the Sheriff of Kanawha County to convey the juvenile to Southern.

On May 6, 1998, the Honorable Judge Irene Berger issued an order in each of the two above-described juvenile cases. Each order required the Division to transport one of the two juveniles from his/her respective detention center to the Kanawha County Circuit Court, located in Charleston, West Virginia, for court proceedings to be held on May 8, 1998. Following the court proceedings, the Division was to return the juvenile to his/her respective detention center, if such

---

**1.** A delinquent juvenile is "a juvenile who has been adjudicated as one who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult."

W.Va.Code § 49–1–4(8) (1997) (Supp.1997). Although § 49–1–4 has been amended, *see* W.Va. Code § 49–1–4 (1998) (Supp.1998), subsection (8) remains the same.

return was deemed appropriate by the court. Judge Berger's orders represented the first occasion on which the Division had been directed to transport, to and from court, juveniles who were being detained pending resolution of delinquency petitions filed against them.[2] The Division apparently complied with the orders of May 6, 1998, and filed this petition for writ of prohibition on May 7, 1998.

Following the Division's compliance with Judge Berger's orders of May 6, the proceeding scheduled with regard to the juvenile being detained at Southern was continued from May 6 to May 11, 1998. Consequently, on May 8, 1998, Judge Berger issued an order requiring the Division to again transport the juvenile from Southern, in Princeton, to Charleston for the May 11 proceedings. The Division received a copy of the order, by fax, at approximately 4:00 p.m., on Friday, May 8. Although the Division complied with the order,[3] it also filed a "MOTION FOR STAY OF PROCEEDINGS" in the circuit court on the morning of May 11, 1998. The Division's counsel argued the motion in court, but it was denied because the juvenile was present and the charges against him/her were withdrawn by the prosecutor.

Immediately following the above-described proceedings of May 11, the same juvenile had a detention hearing in the Kanawha County Circuit Court regarding another matter. The detention hearing resulted in the juvenile being ordered back to Southern, and further resulted in the Division being ordered to again transport the juvenile to Charleston for a preliminary hearing on May 14, 1998. Counsel for the Division orally objected to the portion of the order requiring the Division to provide transportation for the juvenile. Counsel also moved for a stay of

the proceedings, which motion was denied. Subsequently, the Division filed in the circuit court a written motion for stay of the proceedings. On May 13, 1998, the Division filed in this Court an amended statement of facts and exhibits to support its earlier filed petition for writ of prohibition. At the time the amended statement of facts was filed, the aforementioned written motion for stay of proceedings had not yet been ruled upon by the lower court. We granted a rule to show cause, and now deny the writ of prohibition.

## II.

## DISCUSSION

### A.

### Writ of Prohibition

We have repeatedly expressed the limits to our exercise of original jurisdiction in prohibition by declaring that "[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes." *State ex rel. Lawson v. Wilkes*, 202 W.Va. 34, 38, 501 S.E.2d 470, 474 (1998) (quoting *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996)). *See also State ex rel. United States Fidelity & Guar. Co. v. Canady*, 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995); *State ex rel. Doe v. Troisi*, 194 W.Va. 28, 31, 459 S.E.2d 139, 142 (1995). Indeed, it is well established that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code*, 53–1–1." Syl. pt. 2, *State*

---

**2.** In its petition for writ of prohibition, the Department distinguishes between juveniles who are being detained pending resolution of delinquency petitions against them, and juveniles who have been placed at a detention or correctional facility following an adjudication of delinquency. The petition raises only the issue of whether the Department should be required to transport juveniles who are detained pending resolution of delinquency petitions.

**3.** The Division explains, in its petition before this Court, that the juvenile was transported by two staff members of the Southern Regional Detention Center, neither of whom were correctional officers. The transportation was by van, as the facility does not have access to a secure law enforcement vehicle. Finally, the Division complains that, although the center was operating over capacity at the time it was required to provide the juveniles with transportation, it was, nevertheless, required to function on that day without two of its needed staff members.

*ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977).

 The Division argues that prohibition is appropriate in this instance as the circuit court exceeded its legitimate powers. Addressing the application of a writ of prohibition where a court has exceeded its legitimate powers, we have held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). With due consideration for these standards, we proceed to consider the particular issue raised by the Division.

---

4. We find this argument to be without merit, as it ignores the substance of W.Va.Code § 28–1–4 (1971) (Repl.Vol.1992), which states, in relevant part:

As soon as practicable after a youth, on any account, is committed to the custody of the state commissioner of public institutions [commissioner of corrections], the papers in the case shall be mailed to the superintendent of the receiving youth facility, and such youth shall remain in the custody of the court pronouncing such commitment *until he be deliv-*

## B.

### Transportation of Detained Juveniles

The Division argues that the Circuit Court of Kanawha County was without authority to order the Division to transport juveniles, who are being detained prior to adjudication of delinquency, to and from court proceedings. The Division submits that there is no provision in Chapter 49 of the West Virginia Code mandating that it provide such transportation services. Moreover, the Division contends, it has not been allocated funds to perform such a service and likewise does not have correctional officers or secured vehicles to properly transport such juveniles to and from court appearances.

In addition, the Division argues that, pursuant to W.Va.Code § 28–1–4 (1971) (Repl. Vol.1992), prior to adjudication, juveniles are within the custody of the court pronouncing commitment. Because the juveniles are within the custody of the court, the Division reasons, the county sheriff's department bears the responsibility of transporting juveniles to and from court. In support of this reasoning, the Division cites W.Va.Code § 51–3–5 (1923) (Repl.Vol.1994) ("every circuit court . . . shall be attended by the sheriff of the county in which it is held").[4] Finally, the Division claims that the sheriff's department has traditionally transported detained juveniles to and from court appearances.

In her response, Judge Berger concedes that the statutes creating the Division do not expressly provide for or require the Division to transport youths in its care. However, Judge Berger submits that no other agency, state or local, is expressly assigned this responsibility. Contrary to the Division's argument that the obligation to transport these juveniles rests with the various county sher-

---

*ered to an officer of the receiving youth facility, who shall be sent without delay* and duly authorized by the superintendent to conduct such youth by the most direct and convenient route to said facility. . . .

(Emphasis added). It is also noteworthy that W.Va.Code § 28–1–4 applies only to male juveniles, as opposed to all juveniles, and addresses only the initial transportation of a male juvenile to a facility where he has been committed, as opposed to the continuing duty to transport juveniles to and from court appearances.

iff's departments, Judge Berger contends that the Kanawha County Sheriff's obligation to transport prisoners of any type appears to have expired with the close of the county jail. *See* W.Va.Code § 7–8–4 (1923) (Repl.Vol. 1993) (requiring county jailer to "attend the sessions of court, be amenable to its authority, and obey its orders"), and W.Va.Code § 31–20–5(v) (1998) (Supp.1998) ("The [Regional Jail A]uthority shall provide for the transportation of inmates between the regional jails and local holding facilities for court appearances.").

According to Judge Berger, "[h]istorically and currently, the jail or juvenile facility having custody of the pre-trial detainee has had the responsibility to transport to and from court. Indeed, prior to its transfer to [the Division], the Kanawha Home for Children routinely provided such transportation—without having 'correctional officers.'"

Like the parties before us in this action, we find no statutory provision expressly requiring a particular state or local agency to transport detained juveniles to and from court appearances. Having found no express legislative direction on this point, we first scrutinize the provisions creating the Division to determine whether the Legislature has indicated an intent to place the duty of providing for the transportation of such juveniles within the responsibilities of the Division. We believe that it has.

■ It is well established that:

" ' " 'The primary object in construing a statute is to ascertain and give effect to the intent of the legislature.' Syl. Pt. 1, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 2, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984).' Syllabus point 2, *Lee v. West Virginia Teachers Retirement Board*, 186 W.Va. 441, 413 S.E.2d 96 (1991)." Syl. pt. 2, *Francis O. Day Co., Inc. v. Director, Division of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

Syl. pt. 4, *Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 497 S.E.2d 174 (1997). Although the Legislature has not expressly stated that it is the Division's responsibility to provide for the transportation of detained juveniles to and from court appearances, we find that it has made this intention clear.

■ The Division of Juvenile Services was established as a subdivision of the Department of Military Affairs and Public Safety in July 1997. W.Va.Code § 49–5E–2 (1997) (Supp.1998). The Division was created to accomplish two primary policy goals. First, "to provide a continuum of care" for children in this state "who have been charged with an offense which would be a crime if committed by an adult and taken into custody," and second, "to ensure the safe and efficient custody of a detained child *through the entire juvenile justice process*." W.Va.Code § 49–5E–1 (1997) (Supp.1998) (emphasis added). By requiring the Division "to ensure the safe and efficient custody of a detained child *through the entire juvenile justice process*," *Id.*, the Legislature has indicated an intent to require the Division to provide for the transportation of detained juveniles to and from court appearances. However, we need not rely solely on this policy statement, for the Legislature has expressed its intent in even clearer terms.

Among the duties expressly assigned by the Legislature to the Division is the charge to develop "a comprehensive plan to maintain and improve a unified state system of regional predispositional detention centers for juveniles." W.Va.Code § 49–5A–6a (1997) (Supp. 1998). The Legislature outlined the issues to be considered by the Division in this comprehensive plan, and directed the Division to address, *inter alia*, "transportation problems." W.Va.Code § 49–5A–6a(b). Thus, the Legislature has further indicated that providing for the transportation of juveniles housed in juvenile detention centers falls within the scope of the Division's duties to operate and maintain such centers,[5] and "to ensure the safe and efficient custody of a

5. The Legislature has plainly stated that the Division is to operate and maintain juvenile detention centers. *See* W.Va.Code § 49–5E–2(1) (1997) (Supp.1998) ("The division of juvenile services shall consist of two subdivisions: (1) The

office of juvenile detention, which *shall assume responsibility for operating and maintaining centers for the predispositional detention of juveniles.*" (emphasis added)). Although the above referenced juvenile centers are designated for

detained child *through the entire juvenile justice process.*" W.Va.Code § 49–5E–1 (emphasis added).

Furthermore, we note that the system of regional jails employed to house adult criminals is analogous to the system of detention centers for juveniles. Both systems present the same problems regarding transportation of inmates/detainees to and from court appearances. The Regional Jail Authority operates and manages the regional jails much as the Division operates and maintains juvenile detention centers. *Compare* W.Va.Code § 31–20–5(v) (1998) (Supp.1998) (directing the Regional Jail Authority to "assume the responsibility for operation and management of regional jail facilities under the jurisdiction of the state regional jail and correctional facility authority") *with* W.Va.Code § 49–5E–2(1) (1997) (Supp.1998) ("The division of juvenile services shall consist of two subdivisions: (1) The office of juvenile detention, which shall assume responsibility for operating and maintaining centers for the predispositional detention of juveniles."). The Legislature has specifically directed that "[t]he [Regional Jail A]uthority shall provide for the transportation of inmates between the regional jails and local holding facilities for court appearances." W.Va.Code § 31–20–5(v). Due to the similarities between the regional jail system and the system of juvenile detention centers, the Legislature's express direction that the Regional Jail Authority provide transportation for inmates housed in regional

jails lends additional support to our conclusion that the Legislature similarly intended the Division of Juvenile Services to provide for the transportation of juveniles housed in juvenile detention centers.

For the foregoing reasons, we hold that the Division of Juvenile Services of the West Virginia Department of Military Affairs and Public Safety must provide for the transportation, to and from court appearances, of juveniles who are being detained, prior to adjudication of delinquency, at one of the detention centers it operates and maintains.[6] W.Va.Code § 49–5A–6a(b) (1997) (Supp. 1998). Our holding that the Division must *provide for the transportation* of juveniles does not necessarily require the Division to actually *perform* this transportation function. However, under the relevant legislative provisions, it is clearly the Division's duty to perform the transportation function pending its preparation, and the subsequent legislative adoption, of a plan wherein it proposes some other entity to transport juveniles who are being detained prior to adjudication of delinquency. *See* W.Va.Code §§ 49–5E–1 (1997) (Supp.1998) and 49–5A–6a(b) (1997) (Supp.1998).

### III.

### CONCLUSION

For the reasons stated in this opinion, the writ of prohibition is denied.

Writ denied.

---

"predispositional detention of juveniles," which refers to juveniles who have already been adjudicated delinquent and are merely awaiting disposition, circuit courts have the authority to detain pre-adjudicated juveniles under certain circumstances. *See, e.g.,* W.Va.Code § 49–5–8(a) & (d) (1998) (Supp.1998); W.Va.Code § 49–5–8a (1998) (Supp.1998).

**6.** Having determined that the Division is responsible for transporting detained juveniles to and from court appearances, we wish to briefly address an additional, related, issue. This case involves the transportation of juveniles who have been charged with delinquency, but who have not yet been adjudicated delinquent. Juveniles charged with delinquency are necessarily charged with "an act which would be a crime under state law or a municipal ordinance if committed by an adult." W.Va.Code § 49–1–4(8) (1998) (Supp.1998). Thus, we recognize that some of the juveniles the Division will transport

may be dangerous. In transporting these potentially dangerous juveniles, the Division has a dual responsibility. First, it must protect the safety and well-being of the juvenile, as expressed in its mission "to ensure the safe and efficient custody of a detained child through the entire juvenile justice process." W.Va.Code § 49–5E–1. Second, it must ensure public safety. Consequently, the individuals who carry out the duty of transporting juveniles on behalf of the Division must be properly trained and equipped to handle emergencies that are likely to arise during such transportation, for example, a juvenile's attempt to escape. If, as the Division claims, it does not currently possess the necessary personnel and equipment to properly fulfill its duty to transport juveniles assigned to its care, and if it similarly does not possess adequate funding to acquire these necessities, then it must seek funding from the Legislature to enable it to properly perform this important, legislatively mandated, task.

STARCHER, Justice, dissenting:

(Filed Nov. 9, 1998)

The majority opinion states that the "[l]egislature has not expressly stated that it is the Division [of Juvenile Service's] responsibility to provide for the transportation of detained juveniles ... [but] it has *made this intention clear.*" 203 W.Va. at 473, 508 S.E.2d at 633 (emphasis added). This seems contradictory.

How would the Legislature "make something clear" without expressly stating it? That seems unlikely, but I suppose it could be done. One method would be by appropriating money for the otherwise unstated purpose. But the record does not disclose any such appropriation—in fact, the opposite appears to be true: there was no money appropriated to the Division for transporting juveniles. *Id.,* 203 W.Va. at 474, n. 6, 508 S.E.2d at 634, n. 6.

The majority also suggests that a comparison to the express duty to transport prisoners in the Regional Jail System supports finding a "clear" legislative intent to impose such a duty in the juvenile system. This is an entirely backwards argument. The Legislature showed in the regional jail system that it knows exactly how to impose such a duty—*and it did not do so* in the juvenile system. How does this "clearly" show an intent to impose such a duty?

Additionally, the circuit judge in this case was simply wrong in stating that the historic practice has been for juvenile facilities to provide transportation for juvenile detainees. Perhaps in Kanawha County this has been so, but as a judge who has sat in 23 of West Virginia's 55 counties, I know that the sheriffs do this job in many, if not most counties.

What the Legislature *has* done is required the Division of Juvenile Services to "develop a comprehensive plan ... [for a] unified state system of regional predispositional centers for juveniles.... The plan shall identify operational problems ... including ...

transportation problems...." *W.Va.Code,* 49–5A–6a [1997] (in part). The Legislature has required a plan, not imposed a duty. This is more suggestive that current transportation problems be studied, and then a plan for the resolution of transportation problems be developed.

In a diverse state like ours, legal authorities need flexibility to efficiently serve public needs. In some counties, deputy sheriffs are probably by far the preferable entity to transport detained juveniles. Their schedules are more flexible and they can accommodate local needs. In other cases, transportation may be best provided by the Division. This is something the Legislature needs to figure out, with the aid of the Division's plan.

But where there is no direct language in the statute, no money provided to fund the service, and direct language that says "study the transportation problem," I cannot agree that the Legislature has to date mandated that the Division of Juvenile Services forthwith begin providing for the transportation of juveniles to and from detention centers for our circuit courts. Given time, perhaps the Legislature will see fit to do this.

I often hear "judge-made" law criticized. Usually this criticism is wrongly directed at the common-law evolution that this Court is required to do; or to our similar duty to evolve constitutional law to meet modern times.

But the criticism is correct, if it is directed to law like that in the majority opinion. The majority opinion, in the direct interpretation of a statute, has extracted from some general legislative statements a specific duty that I am entirely confident was never in any shape or fashion intended by the Legislature at the time the statute was enacted.

I think a circuit judge clearly has the power to require the sheriff, who as the majority notes must "attend" the circuit court, to transport detained juveniles. I also think that a judge has the power to require the Division of Juvenile Services to transport detained juveniles if there is no sheriff available—under the court's necessary and inherent powers. Until and unless the Legisla-

ture speaks on this issue, neither sheriff nor Division is foreclosed from performing this function. And what, pray tell, is wrong with that situation?

It is erroneous for us to set out the legal fiction that the Legislature has spoken on this issue. Accordingly, I respectfully dissent.