*887 OPINION OF THE COURT
Robert S. Kreindler, J.
Both defendants move for inspection of the Grand Jury minutes and dismissal of the indictment pursuant to CPL 210.30.
For the reasons set forth below, both motions are granted and this indictment is dismissed as to both defendants, with leave to the People to resubmit pursuant to CPL 210.20.
After hearing four witnesses, the Grand Jury returned a manslaughter, first degree, indictment against both defendants arising out of a stabbing of the deceased, Walter Douglas, on December 21, 1989 on a street in downtown Brooklyn. The deceased died on December 29, 1989 of a stab wound to the back, with complications.
The first witness before the Grand Jury stated that he or she* did not witness the stabbing and then proceeded to testify as to other related background circumstances. Said witness, however, gave no indication that he or she was testifying from personal knowledge, and when a juror asked the prosecutor to clarify the situation he got off on the wrong foot by saying, "I don’t think it’s relevant”. Thus, we do not know if the Grand Jury considered admissible or inadmissible (hearsay) evidence from this first witness.
No witness who testified before the Grand Jury stated in so many words that they saw anyone stab the deceased. The testimony did indicate that the deceased was chased, caught and surrounded by the two defendants and another youth, that a fight resumed between the deceased and the defendant Jackson, and that the deceased bent over, screamed, and then got up and ran, and that when the deceased screamed the two defendants and the third youth were standing around him.
The final witness, Detective Donna Wright, testified that she arrested the defendant Jackson and took several statements from him, during which he admitted fighting with the deceased and asking the defendant Trantham to "watch his back”. He noticed that defendant Trantham had a knife and therefore told Trantham that "the knife wouldn’t be necessary, that they wouldn’t be needing a knife.” When the deceased had him in a headlock, he called to the defendant Trantham for help, and thereafter he saw the defendant *888 Trantham’s hand in a stabbing motion, heard deceased scream, and the fight then ended.
This statement of defendant Jackson was introduced without the prosecutor’s advising the Grand Jury that its use was limited in any way.
The presentation took two days, Monday, June 4, and Friday, June 8, 1990, and all the witnesses testified on June 4, the first day of the presentation. Furthermore, on June 4 the presentation was entitled "People v William Jackson”. On the second day, June 8, four days after all the testimony had been completed, the District Attorney advised the Grand Jury that he was adding a name to the indictment, to wit, defendant James Trantham. The death certificate and body identification were then moved into evidence and the Assistant District Attorney then proceeded to charge the Grand Jury on the law.
During the charge, a juror asked if there was any way that he could get the detective’s evidence (defendant Jackson’s statement) read back. The District Attorney replied, "I believe upon a vote of 11 — 12.” The juror then tried to formulate a question as follows: "What you’re saying is we are going to indict both parties on manslaughter. If one knew — only if one knew that there was a weapon available or the weapon — .” The District Attorney, interrupting, stated, "What I can do is make an arrangement to have the detective’s testimony read back to you — Are there 12 persons who would like to have the testimony read back in this case?”
The juror was apparently seeking guidance as to the mens rea necessary to indict. The question appeared to go directly to the heart of the matter and it should have been immediately answered. Instead, the District Attorney replied unresponsively that the detective’s testimony could be read back only if 12 jurors acquiesced. The jurors should have been reminded that where a person is acting as an aider or abettor to the actual slayer, the People must establish that the accessory possessed the same mental culpability necessary to commit the homicide, i.e., intent to cause serious physical injury to the deceased.
A juror then inquired, "We are considering two separate people, aren’t we, and they should be considered — ”, at which point the District Attorney again interrupted, misrepresenting that he would charge them later with respect to how they were to make their determination. He then asked again how many jurors wanted a readback. Nine jurors then raised their *889 hands, whereupon the District Attorney, ignoring the request, proceeded to read the manslaughter count and continued, "With respect to this charge — does anyone have any questions? (no response). At this point I am leaving you to deliberate and vote on this case.” Whereupon, without anything further occurring, the Grand Jury voted a true bill as to both defendants.
CPL 190.30 (1) provides that CPL article 60, governing the rules of evidence in general is, where appropriate, applicable to Grand Jury proceedings. Clearly, therefore, the use of defendant Jackson’s statement against defendant Trantham was inadmissible hearsay and thus improper, prejudicial, and in violation of the rules of evidence. As to the defendant’s constitutional (Confrontation Clause) rights see People v Cruz (70 NY2d 733) and compare People v Scalise (70 AD2d 346).
There was insufficient additional evidence presented to the Grand Jury which, standing alone, would justify the indictment of defendant Trantham.
While it is clear that a vote of 12 grand jurors to indict, each of whom has heard all the evidence and the charge, satisfies the statutory requirements for a valid indictment (CPL 210.35 [3]), nowhere, with the exception of CPL 190.25 (1) can be found any decision or rule requiring a vote of at least 12 grand jurors before a readback of prior testimony will be permitted. Such a rule would be contrary to good practice, especially in the situation presented herein where the Grand Jury was not advised that the prosecutor was seeking an indictment against the defendant Trantham until four days after the testimony in its entirety was presented against him.
CPL 190.25 (1) reads: "Proceedings of a grand jury are not valid unless at least sixteen of its members are present. The finding of an indictment, a direction to file a prosecutor’s information, a decision to submit a grand jury report and every other affirmative official action or decision requires the concurrence of at least twelve members thereof.” This was apparently the basis used by the prosecutor to deny the nine jurors’ request for the readback. While there are no cases that can be found that are in point, it would appear that "official actions and decisions” relate to matters such as deciding whether to call a witness, granting immunity, and the like, and not to a readback of testimony (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.25, at 215).
*890 Given the facts herein, defendant Jackson was clearly prejudiced by the refusal to read back his statement to the detective since the Grand Jury was unable to again hear him telling defendant Trantham that a knife wouldn’t be necessary, that they wouldn’t be needing a knife, and that the injury apparently occurred while he was being held in a headlock by the deceased. A readback would also have given the prosecutor another opportunity to advise the Grand Jury that the statement could not be used against defendant Trantham for any purpose.
For the Grand Jury to properly carry out its function, the District Attorney must give adequate guidance (People v Valles, 62 NY2d 36). While a Grand Jury need not be instructed with the same degree of precision as a petit jury, the District Attorney should provide the grand jurors with sufficient information to enable them to intelligently and properly perform their function (People v Calbud, Inc., 49 NY2d 389). When the District Attorney’s instructions to the Grand Jury are so incomplete or misleading as to substantially undermine its essential function, it may fairly be said that its integrity has been impaired. Under such circumstances, CPL 210.35 (5), as well as our State constitutional guarantees, could require dismissal of the Grand Jury’s indictment (People v Calbud, Inc., supra).
Additionally, an indictment may be dismissed in furtherance of justice even though there may be no basis for dismissal as a matter of law (CPL 210.20, 210.40).
Considering all of the aforesaid errors, I am satisfied that the cumulative effect was to impair the integrity of the Grand Jury to the prejudice of both defendants.
Pending resubmission, bail on defendant Trantham is reduced to $50,000 bond or $25,000 cash, and bail on defendant Jackson is reduced to $25,000 bond or $10,000 cash.
The District Attorney is ordered to give 10 days’ notice to each defendant and his counsel so as to afford them an opportunity to appear before the new Grand Jury should they so desire.

 Witness No. 1 is referred to as "he or she” to avoid revealing the gender of said witness.