OPINION OF THE COURT
Patrick J. McGrath, J.
The above-named defendant stands charged with the crimes of burglary in the first degree, burglary in the second degree, menacing in the second degree and criminal contempt in the second degree (2 counts), in violation of section 140.30 (4); section 140.25 (2); section 120.14 (1); and section 215.50 (3) of the Penal Law. The defendant filed an omnibus motion on October 19, 1998, and the People filed an affirmation in opposition thereto on December 1, 1998.
Defendant has moved to dismiss the indictment pursuant to CPL 210.30 and 210.35 based upon insufficient evidence and a defective Grand Jury proceeding. The court has made an in camera inspection of the Grand Jury minutes and determines that release of said Grand Jury minutes is not necessary to assist the court in determining the motions to dismiss.
The rules of evidence, as contained in CPL article 60, are expressly applicable to the Grand Jury proceeding. {See, CPL 190.30 [1].) In addition to this provision, CPL 190.65 (1) (a) *359 and (b) require “legally sufficient”, and “competent and admissible” evidence in Grand Jury proceedings (see also, CPL 70.10 [1]). Accordingly, a Grand Jury indictment may not be founded upon hearsay evidence alone (People v Pelchat, 62 NY2d 97, 106; People v Jackson, 18 NY2d 516, 519; People v Perry, 199 AD2d 889 [3d Dept 1993]).
Defendant alleges that the Grand Jury proceeding was defective based upon the People’s failure to comply with CPL 60.35 in regard to impeachment of one’s own witness. CPL 60.35 provides that when a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of the party who called him, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony. Evidence concerning such prior contradictory statement may only be received in evidence for the purpose of impeaching the credibility of the witness and does not constitute evidence-in-chief. Upon receiving such evidence, the court must so instruct the jury (see, CPL 60.35 [2]). Also, when a witness has made a prior signed or sworn statement contradictory to his testimony upon a material issue of the case, but the witness’ testimony does not tend to disprove the position of the party who called him, evidence that the witness made such prior statement is not admissible and its contents cannot be revealed to the jury by trying to refresh the witness’ recollection (see, CPL 60.35 [3]).
The Court of Appeals has indicated that “CPL 60.35 manifestly permits impeachment only when the testimony of the witness in court affirmatively damages the case of the party calling him” (People v Fitzpatrick, 40 NY2d 44, 51). The inability of the witness to recall the events in question is insufficient to justify impeachment, for such testimony merely fails to corroborate or bolster the prosecutor’s case; it does not contradict or disprove any testimony or other factual evidence presented by the prosecution (People v Fitzpatrick, supra, at 52; People v Burke, 96 AD2d 971, 972, affd 62 NY2d 860). Also, the mere fact that a witness’ testimony does not meet the expectations of the prosecutor is not a proper basis for allowing impeachment under CPL 60.35 (People v Johnson, 108 AD2d 1059 [3d Dept 1985]).
Four eyewitnesses testified before the Grand Jury on behalf of the People: Jennifer Berrings, the defendant’s girlfriend; Gloria Terry, the owner of the premises involved; Kenneth Paul, also the owner of the premises involved; and Matthew *360 Guyette, a person inside a bedroom with Jennifer Berrings when the defendant allegedly threatened him with a gun. Gloria Terry and Matthew Guyette previously gave sworn written statements to the police regarding the incident.
During Mr. Guyette’s Grand Jury testimony he indicated that the defendant pointed something at him but he was not sure what it was and that he did not remember any threats being made by the defendant. After this statement by the witness, the Assistant District Attorney continuously impeached the witness by revealing the contents of his prior written statement to the Grand Jury. After repeatedly impeaching the witness with his prior statement the Assistant District Attorney gave an instruction to the Grand Jury that “I just want to state for the record I’m going to cite CPL Section 60.35 under the rules of evidence for impeachment of one’s own witness by proof of a prior contradictory statement. In this case I’ve used Matt Guyette’s prior statement to refresh his recollection, and if any impeachment occurred, it can occur pursuant to CPL 60.35” (Grand Jury testimony [G.J.T.], Aug. 7, 1997, at 108). This is the only instruction given by the Assistant District Attorney concerning the rules of CPL 60.35.
Also, during the impeachment of witness Guyette by the Assistant District Attorney concerning his prior written statement, on two separate occasions the Assistant District Attorney admonished the witness that he was under oath.
Witness Gloria Terry testified that although she did not invite the defendant to her home that evening he was always welcomed. The witness also testified that she was not sure if her windows were locked and that her doors were usually unlocked. The witness also indicated that she did not wish to press charges against the defendant. The witness also testified she was not sure who opened her kitchen window.
The Assistant District Attorney then repeatedly impeached witness Terry by revealing the contents of her prior sworn statement, the contents of the felony complaint she signed, and oral unsworn statements she allegedly made to the investigating Deputies. Also, the Assistant District Attorney had Ms. Terry testify concerning numerous oral unsworn statements made that evening by the other eyewitnesses.
Witness Kenneth Paul indicated that the defendant had permission to be in his house on the morning in question. The Assistant District Attorney repeatedly asked Kenneth Paul what Matthew Guyette had said at the time of the incident. Mr. Paul was allowed to testify concerning prior unsworn oral *361 statements allegedly made by Mr. Guyette that contradicted his Grand Jury testimony. The Assistant District Attorney stressed what was said by questioning Kenneth Paul as follows:
“ada: Exactly what was said?
“the witness: He just came down stairs, said that Tommy had a gun.
“ada: He said Tommy had a gun?
“the witness: Yeah.” (G.J.T., Aug. 7, 1997, at 193.)
As can be seen from the above, the Assistant District Attorney not only violated the rules of evidence concerning impeachment of one’s own witness, she also failed to instruct the Grand Jury concerning the use of such prior statements. Nowhere did the Assistant District Attorney inform the Grand Jury that prior inconsistent statements, if admissible at all, could not be considered as evidence-in-chief. Also, the Assistant District Attorney elicited numerous oral unsworn statements of the witnesses for impeachment purposes which is clearly in violation of GPL 60.35.
Not only did the Assistant District Attorney violate the rules of evidence in connection with GPL 60.35 when examining the above eyewitnesses, she continued to do so in a more egregious manner when two Deputy Sheriffs were examined before the Grand Jury. The violation was more egregious since the Assistant District Attorney elicited oral unsworn statements given by Matthew Guyette, Gloria Terry, and Kenneth Paul which were clearly hearsay and in violation of GPL 60.35 since the statements were neither sworn to nor a signed written statement. And again, the Assistant District Attorney failed to instruct that any such statements, even if arguably admissible, could not be considered as evidence-in-chief.
Deputy Wohlleber who responded to the scene after the incident testified before the Grand Jury. All throughout Deputy Wohlleber’s testimony the Assistant District Attorney had him testify concerning oral unsworn statements given by the above eyewitnesses. Deputy Wohlleber was allowed to testify concerning oral statements contradictory to the Grand Jury testimony of the above witnesses. Specifically, on the issue of permission to be in the premises, whether or not a gun was actually seen, whether or not the back door was locked, and whether or not Matthew Guyette said he feared for his life. Also, the Assistant District Attorney allowed Deputy Wohlleber to testify concerning double hearsay, what Gloria Terry *362 told Deputy Wohlleber that Jennifer Berrings had said over the phone. He also testified concerning double hearsay in regard to what Matthew Guyette had told Kenneth Paul regarding the gun.
The same kind of improper testimony was allowed when Deputy Richard Collier testified before the Grand Jury. Deputy Collier also responded to the scene after the incident. The Assistant District Attorney again elicited unsworn oral statements given by the eyewitnesses contradictory to their Grand Jury testimony.
The Assistant District Attorney also allowed improper opinion evidence by Deputies Wohlleber and Collier. Concerning Deputy Wohlleber, the following colloquy occurred:
“ada: Did you have any doubt in your mind, did you have any question that this might have not happened?
“the witness: No, I knew it happened.
“ada: You knew it happened. Okay.” (G.J.T., Aug. 21, 1997, at 33.)
Concerning Deputy Collier, the Assistant District Attorney also asked his opinion concerning whether or not the incident had occurred:
“ada: Did you have any doubt in your mind that Tom Winant was in that house and did this?
“witness: No, there’s no doubt that he did it.
“ada: There’s no doubt in your mind?
“witness: No.
“ada: You have been a deputy for seven years?
“witness: Yep.” (G.J.T., Aug. 21, 1997, at 39.)
Also, the Assistant District Attorney asked Deputy Collier his opinion concerning the defendant’s permission to be in the premises:
“ada: Is it clear to you at that time he didn’t have permission to be in the house?
“witness: Yes.
“ada: And that’s the indication they gave to you?
“witness: Yes.” (G.J.T., Aug. 21, 1997, at 41.)
Clearly, the above opinion evidence was improper under the rules of evidence since it usurped the fact-finding function of the Grand Jury (People v Ciaccio, 47 NY2d 431, 438).
The Assistant District Attorney also elicited improper and prejudicial testimony from Deputy Wohlleber and Deputy *363 Bruce Smith concerning the defendant’s alleged prior bad acts. Each Deputy was allowed to testify concerning the fact that the defendant had been in trouble before for shooting a gun at a bar. Concerning Deputy Wohlleber, the following colloquy occurred:
“ada: And what, if anything, did he say to you?
“the witness: He said he’s been in trouble before for shooting a gun at a bar or something like that. He has been in trouble.
“ada: And what did he say after he told you he had been in trouble before, been in trouble for shooting a gun outside a bar?
“the witness: Later he said he is going to have to hire Terry, Terry Kindlon as an attorney.” (G.J.T., Aug. 21, 1997, at 34.)
Concerning Deputy Smith, the following colloquy occurred:
“ada: Okay. When you arrived at the station, what if any admissions, did he make?
“witness: And during our conversations, he said that he had been in trouble before working as a police officer over in Albany, and he thought that Internal Affairs was going to Tuck him over’ on this.
“ada: That’s what he said, he thought Internal Affairs was going to Tuck him over’?
“witness: Yes.” (G.J.T., Aug. 21, 1998, at 54-55.)
It is well established that evidence of uncharged crimes or prior bad acts may not be admitted when the purpose is to demonstrate the defendant’s criminal propensities (People v Molineux, 168 NY 264, 313; see, People v Ingram, 71 NY2d 474, 479; People v Allweiss, 48 NY2d 40, 47). One exception to the rule permits the admission of such evidence to prove the specific crime charged when it tends to establish the element of intent or other recognized exceptions (People v Molineux, supra, at 293), provided that the trial court carefully weighs the degree of probativeness with the potential for prejudice and gives the proper limiting instructions to the finder of fact (People v Ventimiglia, 52 NY2d 350, 359-360).
The defendant’s alleged prior bad act in no way came under one of the recognizable exceptions of Molineux, i.e., motive, intent, absence of mistake, a common scheme or plan, identity of the perpetrator, or to rebut a defense of entrapment (see, People v Molineux, supra; People v Allweiss, supra). The Assistant District Attorney attempted to justify its admission by indicating “I ask you [to] consider that admission not for the *364 truth of the matter that he had shot a gun outside of a bar before and that he had been in trouble before, but for the fact that that was stated, that’s a state of mind of the defendant at that time and that is admissible. Okay. Thank you.” (G.J.T., Aug. 21, 1997, at 35.) Such explanation is specious legal double talk to attempt to justify the receipt of improper criminal propensity evidence against the defendant.
Since the Grand Jury minutes are rife with instances of improper hearsay testimony it is impossible to tell just what evidence the Grand Jury based its indictment upon. The only read-back testimony requested by the Grand Jury was that of Matthew Guyette. The questions by the grand jurors seem to imply that consideration was given to the prior written statement of Mr. Guyette which could not be considered as evidence-in-chief pursuant to CPL 60.35. The following colloquy occurred between the Assistant District Attorney and the grand jurors: “ada: In the case of the People of the State of New York vs. Thomas Winant, I am informed that the Grand Jurors may want a read back?
“foreperson: Yes, Matt’s testimony.
“ada: The whole thing?
“foreperson: The beginning parts.
“secretary: And the part where — how do I word it?
“grand juror: He denied signing his statement.
“secretary: Where he was contradicting what he said in his statement.” (G.J.T., Aug. 21, 1997, at 77.)
The actual vote of the Grand Jury speaks for the fact that there was not overwhelming proof submitted. Eight counts were submitted to the Grand Jury. They returned a no bill on two counts of burglary in the first degree in violation of section 140.30 (1) and (3) and also a no bill on the charge of criminal possession of a weapon in the third degree (Penal Law § 265.03). The five counts they did return an indictment on were by a vote of 13, 14, 14, 12 and 12, respectively, out of a total of 17 votes.
In view of all of the above errors, the cumulative effect was to impair the integrity of the Grand Jury proceeding to the prejudice of the defendant, requiring dismissal of the indictment pursuant to CPL 210.35 (5) (People v Huston, 88 NY2d 400; People v Placencia, 157 Misc 2d 397; People v Jackson, 148 Misc 2d 886). Even if it could be argued that there was sufficient other reliable and competent evidence presented, given the cumulative effect of the errors and the fact that the *365 Grand Jury may have founded the indictment upon improper hearsay testimony, dismissal of the indictment is required (People v Pelchat, 62 NY2d 97, 106, supra; United States v Estepa, 471 F2d 1132). Accordingly, defendant’s motion to dismiss the indictment pursuant to CPL 210.35 (5) is granted.
In view of the above the court need not decide any other issues raised by the defendant’s omnibus motion.